761 So.2d 1221 (2000)
K.P. MEIRING CONSTRUCTION, INC. and Great American Insurance Company, Appellants,
v.
NORTHBAY I & E, INC., Appellee.
No. 2D99-3037.
District Court of Appeal of Florida, Second District.
June 30, 2000.
*1222 Joseph V. McNabb of Marlowe & McNabb, P.A., Tampa, for Appellants.
Debra J. Sutton, Bartow, for Appellee.
CASANUEVA, Judge.
In this action by a subcontractor against the contractor and surety we review the denial of the contractor's motion to stay pending arbitration, which the trial court denied after a nonevidentiary hearing without stating any rationale. We have examined the relevant contracts and find that the trial court erred as a matter of law. Accordingly, we reverse.
The builder/owner in this case, La Quinta Inns, Inc., a corporation headquartered in San Antonio, Texas, contracted with K.P. Meiring Construction, Inc., a corporation headquartered in Indianapolis, Indiana, to build a hotel in Lakeland, Florida. Meiring subcontracted with Northbay I. & E., Inc., a Florida corporation, to provide certain labor, materials, and services. In this lawsuit filed in Polk County, Northbay sued Meiring for breach of contract and quantum meruit, contending that Meiring owed over $68,000 for work performed and materials and supplies provided. Northbay also sued Great American Insurance Company, Meiring's surety on a lien transfer bond, to foreclose a mechanics lien. Meiring and Great American have not answered the complaint and have appeared only to move for stay pending arbitration.
Although this motion was titled "motion to stay pending arbitration," the real thrust of the motion was to compel arbitration of the underlying dispute, as is apparent from the arguments presented to the trial court at the hearing. Thus, this court has jurisdiction over this matter pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(v), which permits review by this court of a nonfinal order determining "the entitlement of a party to arbitration." See also § 682.20(1)(a), Fla. Stat. (1999) (permitting an appeal to be taken from an application to compel arbitration). Furthermore, Great American, the surety, is a proper party to this appeal, even though it would not be a party to the arbitration. This is because Great American's liability is contingent upon the liability *1223 of its bond principal, so Great American will be bound by the results of the arbitration between Meiring and Northbay. Thus, Great American would be entitled to a stay of the action on the lien transfer bond until the underlying issues between Meiring and Northbay were determined by arbitration. See Kidder Elec. of Fla., Inc. v. United States Fidelity & Guar. Co., 530 So.2d 475 (Fla. 5th DCA 1988); Post Tensioned Eng'g Corp. v. Fairways Plaza Assoc., 429 So.2d 1212 (Fla. 3d DCA 1983).
The trial judge did not hold an evidentiary hearing in this matter and apparently disposed of the motion by reference to the contract documents only. "Where the determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is one of law only ... [and] an appellate court is not restricted in its ability to reassess the meaning and effect of a written instrument to reach a conclusion contrary to that of the trial court." Angell v. Don Jones Ins. Agency, Inc., 620 So.2d 1012, 1014 (Fla. 2d DCA 1993). Our review of the relevant documents and the applicable law has led us to conclude that the trial court should have stayed this lawsuit until any claims arising out of this subcontract had been settled by mediation or arbitration.
As a general premise, "[a]rbitration is especially appropriate in situations involving issues that are unique to certain industries and which require specialized knowledge for their resolution." Lake Plumbing, Inc. v. Seabreeze Constr. Corp., 493 So.2d 1100, 1102 (Fla. 2d DCA 1986). As this court stated in Lake Plumbing, "the construction industry is such an industry." Id. Courts are required to indulge every reasonable presumption in favor of arbitration, a favored means of dispute resolution. See Roe v. Amica Mut. Ins. Co., 533 So.2d 279 (Fla. 1988); Florida Select Ins. Co. v. Keelean, 727 So.2d 1131 (Fla. 2d DCA 1999).
The Florida Arbitration Code, sections 682.01-682.22, Florida Statutes (1999), is designed "to encourage arbitration of disputes." Roe, 533 So.2d at 281.
Section 682.02 states that an "agreement or provision [for arbitration] shall be valid, enforceable, and irrevocable without regard to the justiciable character of the controversy; provided that this act shall not apply to any such agreement or provision to arbitrate in which it is stipulated that this law shall not apply...." Upon application by a party to compel compliance with an arbitration provision, the court shall grant the application if it "is satisfied that no substantial issue exists as to the making of the agreement or provision." § 682.03. Thus, the trial court must examine the contracts to determine whether it was the intent of the parties to submit their claims to compulsory arbitration. If so, the court should grant a stay of the litigation while the case proceeds to arbitration. The only means to obviate enforcement of a mandatory arbitration clause in the contract would be for the court to find that the parties had "stipulated that this law [the Florida Arbitration Code] should not apply." In this case Northbay has maintained that the contract documents demonstrate that the parties agreed not to apply the Florida Arbitration Code. We reject that view as unsupported by the contract documents themselves and the applicable law of contract interpretation.
We must first decide which documents constitute the actual agreement between the parties on the issue of arbitration. This involves determining whether the terms of the subcontract control over terms of the prime contract between the owner and the general contractor. As is the general rule, Northbay's subcontract incorporated by reference the prime contract as one of subcontract documents listed in article 1 of the memorandum of agreement between contractor and subcontractor. This is important because the prime contract contains both choice of law *1224 and forum selection clauses. Article 21 of the prime contract requires that "[t]his Agreement shall be construed and interpreted in accordance with the laws of the State of Texas. The venue for any legal action taken under this Agreement shall be Bexar County, Texas." The subcontract contains a choice of law provision in article 15.3.12.8, which states: "Subject to paragraph 6.6, the Subcontract shall be governed by Florida law."
The choice of law provisions are important because a Florida court is not empowered to compel parties to arbitrate in a foreign jurisdiction. See Damora v. Stresscon Int'l, Inc., 324 So.2d 80 (Fla. 1975). In this case, however, the prime contract does not contain an arbitration provision. We have reviewed the documents and have concluded that the parties intended that the subcontract terms should take precedence over any potentially conflicting prime contract provisions concerning arbitration, forum, or choice of law, because the subcontract defines the specific agreement between these two parties, Meiring and Northbay.
Also included within the subcontract, and appended to it, is the AIA Document A401 "Standard Form of Agreement Between Contractor and Subcontractor," which contains a mandatory arbitration clause in article 6.1:
6.1 Any controversy or claim between the Contractor and the Subcontractor arising out of or related to this Subcontract, or the breach thereof, shall be settled by arbitration, which shall be conducted in the same manner and under the same procedure as provided in the Prime Contract with respect to claims between the Owner and the Contractor.... If the Prime Contract does not provide for arbitration or fails to specify the manner and procedure for arbitration, it shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.
The standard arbitration provisions were contractually modified by the parties in article 15, "Miscellaneous Provisions," to include the following:
6.6 If a dispute arises out of or relates to this Subcontract, or the breach thereof, and if said dispute cannot be settled through direct discussions, the parties agree to first endeavor to settle the dispute in an amicable manner by mediation under the Construction Industry Mediation Rules of the American Arbitration Association, before having recourse to arbitration or a judicial forum....
6.6.1 The forum for any mediation or arbitration will be as mutually agreed between the parties. If the parties can not agree on a forum, the forum shall be Indianapolis, Indiana for mediation or arbitration, as the case may be.
6.6.2 Every provision of the arbitration and mediation provisions are [sic] intended to be severable such that, if any provision or term thereof is illegal or invalid for any reason whatsoever, such term or provision shall be enforced to the fullest extent possible or shall be severed and shall not affect the validity of the remainder of the arbitration and mediation provisions.
The clear intent of the parties, as is obvious from these unambiguous contract provisions, was to settle any disputes arising out of their contract by mediation or arbitration rather than by resort to the courts. The purpose of Meiring's and Great American's motion to stay was to have the court place this litigation on hold while Northbay filed its demand for mediation and arbitration with the American Arbitration Association, as contemplated by the parties. This standard AIA A401 arbitration form is virtually identical to that approved by this court in the Lake Plumbing case, 493 So.2d at 1101. Furthermore, as noted by the court in W. Passalacqua Builders v. Mayfair House Ass'n, 395 So.2d 1171, *1225 1173 (Fla. 4th DCA 1981), "Contract provisions for arbitration of all claims, disputes or other matters arising out of or relating to a construction contract are enforceable in accordance with the Florida Arbitration Code."
The only contractual stumbling block to Meiring's position that the subcontractor's breach of contract claims should be submitted to arbitration is the language in article 6.6.1 stating that if the parties cannot agree on a forum for mediation or arbitration, the forum shall be Indianapolis, Indiana. This term, requiring arbitration in Indianapolis under certain conditions, is not enforceable by a trial court pursuant to section 682.03 of the Florida Arbitration Code because it calls for arbitration in a foreign jurisdiction. According to the Florida Supreme Court, "Florida courts have no statutory authority under Chapter 682 to compel arbitration in another jurisdiction." Damora v. Stresscon Int'l, Inc., 324 So.2d 80, 82 (Fla.1975). The contract in Damora required that arbitration occur in New York City, and the contract did not specify that either Florida law or procedure would apply. The fundamental policy behind Damora and similar cases is that contractual provisions requiring arbitration in another jurisdiction or pursuant to foreign law constitute rejections of the Florida Arbitration Code. See Romar Transports, Ltd. v. Iron & Steel Co. of Trinidad and Tobago, 386 So.2d 572 (Fla. 4th DCA 1980).
Although it is possible that the Florida choice of law provision governing the subcontract would render the Damora holding inapplicable to this case, see Sun City Diner of Boca Raton, Inc. v. Century Financial Advisors, Inc., 662 So.2d 967 (Fla. 4th DCA 1995), we need not reach that issue simply because, as a matter of law, the clause requiring arbitration in Indianapolis is a nullity in this case. In accordance with the strong public policy favoring arbitration, "[a]ll questions concerning the scope or waiver or the right to arbitrate under contracts should be resolved in favor of arbitration rather than against it." Beverly Hills Dev. Corp. v. George Wimpey of Fla., Inc., 661 So.2d 969, 971 (Fla. 5th DCA 1995) (citing Ronbeck Constr. Co. v. Savanna Club Corp., 592 So.2d 344 (Fla. 4th DCA 1992)). The Indianapolis forum language in section 6.6.1 of the subcontract is the only hindrance to enforcement of the arbitration provisions of this subcontract by a Florida court, and that language does not become effective unless the parties cannot agree on a forum. It is apparent that Northbay seized upon this language as its only means to invalidate the otherwise mandatory mediation and arbitration provisions. At the hearing on this motion, the attorney for Meiring (the Indianapolis corporation) stipulated that his client had agreed to a Florida forum. In response, the attorney for Northbay (the Florida corporation) stated: "It takes two people to agree, and we don't agree that we're arbitrating anywhere. And in the absence of an agreement, it goes to Indianapolis. And once it goes to Indianapolis, this Court can't compel it to occur at all."
Northbay's attorney's obstinate refusal to agree to any forum for the purpose of frustrating Meiring's right to have subcontract disputes submitted to mediation or arbitration paints a vivid picture of what is meant by the drab legal principle of violation of the duty of good faith and fair dealing in performance and enforcement of contracts. See Cox v. CSX Intermodal, Inc., 732 So.2d 1092 (Fla. 1st DCA 1999) (Florida law recognizes implied covenant of good faith and fair dealing to protect the parties' reasonable expectations.). Northbay, a Florida corporation, has violated the principles of good faith in performance of this contract by virtue of filing a lawsuit in Florida to sue under a contract that is to be governed by Florida law but then capriciously refusing to agree on Florida as a forum for arbitration, for the sole purpose of invalidating the arbitration provision. See Cox, 732 So.2d at *1226 1098. Just as a party to an arbitration provision can waive arbitration by filing a lawsuit or otherwise engaging in litigation, see Hill v. Ray Carter Auto Sales, Inc., 745 So.2d 1136 (Fla. 1st DCA 1999); Beverly Hills Dev. Corp., a party can similarly waive a right to insist on an inconsistent, alternative forum. Furthermore, the contract by its own terms negates Northbay's tactics by providing that, under these circumstances, the Indianapolis forum selection clause is invalid, is severable, and does not affect the validity of the remainder of the mediation and arbitration provisions.
In conclusion, we hold that the contract between these parties expresses a clear intent to settle disputes by mediation or arbitration. Under the circumstances of this case, Northbay's attempt to invalidate the agreement by refusing to arbitrate constitutes bad faith and should not have been sanctioned by the trial court. The Indianapolis forum selection clause is a nullity; the arbitration clause is governed by the Florida Arbitration Code; and the agreement is valid, enforceable, and irrevocable. § 682.02, Fla. Stat. (1999).
Reversed and remanded for the trial court to enter a stay pending arbitration.
GREEN, A.C.J., and SALCINES, J., Concur.