797 So.2d 1079 (2001)
Ex parte Royce K. MESSER and Richard S. Messer.
(Re Royce K. Messer and Richard S. Messer v. Brindley Construction Group, LLC, et al.)
1982082.
Supreme Court of Alabama.
April 13, 2001.
*1080 T. Robin McIntyre, Opelika, for petitioners.
James B. Sprayberry, Auburn, for respondents.
*1081 PER CURIAM.
Royce K. Messer and Richard S. Messer, d/b/a Quality Formworks, filed a notice of appeal seeking review of the Lee Circuit Court's order compelling them to submit their claims against Brindley Construction Group, LLC, to arbitration. We treat the notice of appeal as a petition for a writ of mandamus, as we did in Henderson v. Superior Insurance Co., 628 So.2d 365 (Ala.1993). We deny the petition.
On February 3, 1998, Brindley Construction Group contracted with the Messers, through two separate contracts, for the Messers to perform work on one of Brindley Construction Group's construction projects, a project in Auburn known as "Morningside of Auburn." One contract, Subcontract No. 1136-06, was for framing work, and the other contract, Subcontract No. 1136-07, was for concrete work. The two contracts were executed contemporaneously. Both contracts contained the same arbitration agreement. Article 10 of the contracts provides in relevant part:
"10.1 All claims or disputes between the Contractor and the Subcontractor under $50,000 arising out of or relating to the Contract Documents, or the breach thereof, shall be decided, by arbitration [emphasis added] in Nashville, Davidson County, Tennessee in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise and subject to an initial presentation of the claim or dispute to the Architect as may be required under the Owner/Contractor Agreement....
"THE GENERAL CONTRACTOR HAS THE OPTION TO CHOOSE LITIGATION IN LIEU OF ARBITRATION.
"10.2 Subcontractor agrees to join in and be bound by the aforementioned of [sic] proceedings. Further, Subcontractor agrees to participate in and be bound by judicial or administrative proceedings relating to the contract between the Owner and Contractor or other subcontracts which also relate, even though only indirectly, to this Subcontract, where Contractor makes written demand upon Subcontractor to so participate."
On August 14, 1998, Brindley Construction Group replaced the Messers with another subcontractor. The Messers sued several defendants, including Brindley Construction Group, against which they alleged breach of the two contracts and claimed damages totaling $63,306.69 ($29,573.15 under Subcontract 1136-06 and $33,733.54 under Subcontract 1136-07). The Messers also sued Danny Hall as an agent for Brindley Construction Group, alleging fraud and wantonness against both. The Messers made a claim against Morningside of Alabama, L.P., the owner of the construction project Morningside of Auburn, for enforcement of the Messers' mechanic's and materialman's lien.[1]
Brindley Construction Group moved to stay the litigation and to compel arbitration, based on Article 10 of the two contracts. The Messers filed a brief in opposition to the motion to stay and to compel arbitration. After conducting a hearing, the trial court granted the motion to stay and to compel arbitration.
*1082 The Messers filed a notice of appeal from the order compelling arbitration. We treat the notice of appeal as a petition for a writ of mandamus, as we did in Henderson v. Superior Insurance Co., supra. "A writ of mandamus is an extraordinary remedy, and one petitioning for it must show: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte Ridgeview Health Care Ctr., Inc., 786 So.2d 1112, 1115 (Ala. 2000). We conclude that the Messers have not met their burden of showing "a clear legal right" to an order vacating the order compelling arbitration.
The Messers contend that this dispute does not fall within the scope of the arbitration agreement. Specifically, they argue that because § 10.1 of both contracts provides that "[a]ll claims or disputes ... under $50,000 arising out of or relating to the Contract Documents, or the breach thereof, shall be decided by arbitration," and because their claims aggregate more than $50,000, their claims are not subject to arbitration. The Messers argue that the sums due under the two contracts are part of the same claim because each month Brindley Construction Group paid them in one lump sum for the work they performed under both contracts, which are virtually identical. Brindley Construction Group contends that the Messers' claims are subject to arbitration because, Brindley Construction Group says, they are two separate claims, each under $50,000, under two separate contracts. Thus, the issue before this Court is whether the sums sought under the separate contracts are part of the same "claim."
The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 (1994), preempts conflicting Alabama law, in particular Ala. Code 1975, § 8-1-41(3), and thereby makes enforceable under federal law a predispute arbitration agreement in a contract evidencing a transaction that involves interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74, 277, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 617 (Ala.1997). "When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In applying general Alabama rules of contract interpretation to the language of an arbitration agreement subject to the FAA, this Court must, in accordance with the federal substantive law on arbitration, resolve any ambiguities as to the scope of the arbitration agreement in favor of arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (Section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," and "parties are generally free to structure their arbitration agreements as they see fit." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478-79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Accordingly, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *1083 Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
The parties do not dispute that they entered into two separate contracts, each containing an arbitration provision. The breach of one contract did not necessarily constitute a breach of the other contract.[2] Had they so intended, the parties could have entered one contract covering both the framing work and the concrete work. They did not. Because they entered two separate contracts, the Messers have two separate breach-of-contract claims; each claim "aris[es] out of or relat[es] to" only one of the contracts. Thus, we conclude that the sums sought under the two separate contracts are not part of the same claim. The Messers have not met their burden of showing "a clear legal right" to an order of the circuit court vacating its order compelling arbitration.
PETITION DENIED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE and WOODALL, JJ., dissent.
JOHNSTONE, Justice (dissenting).
Brindley Construction Group moved to stay the litigation and to compel arbitration. In support of its motion, Brindley Construction Group submitted two documents each entitled "SUBCONTRACT." Both of the contracts contained the same arbitration agreement. Article 10 of the contracts provides:
"10.1 All claims or disputes between the Contractor and the Subcontractor under $50,000 arising out of or relating to the Contract Documents, or the breach thereof, shall be decided by arbitration [emphasis added] in Nashville, Davidson County, Tennessee in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise and subject to an initial presentation of the claim or dispute to the Architect as may be required under the Owner/Contractor Agreement. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joiner [sic] or in any other manner, any person or entity not a party to the Agreement under which such arbitration arises, unless it is shown at the time the demand *1084 for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect or any of the Architect's employees or consultants. The agreement herein among the parties to the agreement and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof. The hearing locale of any and all arbitration proceedings shall be Nashville, Davidson County, Tennessee.
"THE GENERAL CONTRACTOR HAS THE OPTION TO CHOOSE LITIGATION IN LIEU OF ARBITRATION. [Emphasis in original.]
"10.2 Subcontractor agrees to join in and be bound by the aforementioned of [sic] proceedings. Further, Subcontractor agrees to participate in and be bound by judicial or administrative proceedings relating to the contract between the Owner and Contractor or other subcontracts which also relate, even though only indirectly, to this Subcontract, where Contractor makes written demand upon Subcontractor to so participate.
"10.3 In the event it becomes necessary for Contractor to hire an attorney, consultant or other expert to enforce any or all of the terms and conditions of this Subcontract, Subcontractor and its surety agree to be liable to Contractor for any and all fees of said attorney(s), consultant(s) or other expert(s), and for all other costs of litigation incurred by Contractor.
"10.4 No claim or action by Subcontractor may be commenced against Contractor or Owner after receipt of final payment by Subcontractor in accordance with the terms and conditions of Subcontract.
"10.5 In the event that a claim or dispute arises between the Contractor and the Subcontractor, then both parties will continue to work during such dispute."
The issue before this Court is whether the sums allegedly owed under the separate contracts are part of the same claim. The operative facts follow.
On February 3, 1998, Brindley Construction Group contracted with the Messers d/b/a Quality Formworks, through two contracts, for the Messers to perform framing and "concrete" work on a construction project known as Morningside of Auburn in Auburn, Alabama. The contracts were executed contemporaneously. Each month Brindley Construction Group paid the Messers in one lump sum check for the work the Messers performed under both contracts and under other contracts entered between Brindley Construction Group and the Messers. On August 14, 1998, without written notice as required by the contracts, Brindley Construction Group replaced the Messers with another subcontractor.
"`[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT & T Techns., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). "[T]he arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, ... so the question `who has the primary power to decide arbitrability' *1085 turns upon what the parties agreed about that matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citations omitted). "If ... the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." First Options, 514 U.S. at 943, 115 S.Ct. 1920. Article 10 of the contracts is silent on the question who has the power to decide arbitrability. Therefore, because the parties did not agree to submit the question of arbitrability to arbitration, the court determines the question of arbitrability. First Options.
Rules 8(e) and 10(b), Ala.R.Civ.P., authorize a plaintiff to combine claims arising out of a single transaction or occurrence in one complaint. Section 6-5-440, Ala.Code 1975, provides:
"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."
The doctrines of res judicata and collateral estoppel prohibit a plaintiff from recovering damages pursuant to two separate actions for claims arising out of a single transaction or occurrence. See Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725 (Ala.1990) (the doctrine of res judicata bars "any claim that was or could have been adjudicated in the prior action" between the parties); Brooks v. Peoples Nat'l Bank of Huntsville, 414 So.2d 917, 920 (Ala.1982) ("The [equitable] principle [of collateral estoppel] bars parties in a subsequent proceeding from asserting any matter which might or ought to have been litigated in a prior proceeding."). (Emphasis added.) The contention of Brindley Construction Group would require the Messers to bring two separate arbitration proceedings to recover the sums allegedly owed by Brindley Construction Group for the Messers' work on the same job.
"`[The] doctrines of [res judicata and collateral estoppel] apply as well to awards in arbitration as they do to adjudications in judicial proceedings.'" Old Republic Ins. Co. v. Lanier, 790 So.2d 922, 928 (Ala.2000) (emphasis omitted) (quoting American Ins. Co. v. Messinger, 43 N.Y.2d 184, 189-90, 401 N.Y.S.2d 36, 39, 371 N.E.2d 798, 801 (1977)).
Moreover, and paradoxically, even if the claims under the two contracts be deemed distinct, the express language of the arbitration provisions themselves combines the claims and thereby defeats arbitration. The arbitration provisions in each contract expressly include within their ambit "[a]ll claims or disputes between [Brindley] and [the Messers] under $50,000 arising out of or relating to the Contract Documents, or the breach thereof." The claim of the Messers under each contract arises out of or relates to the other contract or the alleged breach thereof in a number of ways. First, the parties to the contracts and the claims are the same. Second, the contracts provide for work on the same construction project. Third, each month, Brindley paid the Messers with a single check for the total owed pursuant to these contracts and others. And fourth, each contract provides:
"13.1 Subcontractor may be deemed by Contractor to have materially breached the Subcontract if Subcontractor should... (d) be terminated under any other contract relative to the project. In case of such a breach as herein defined or as *1086 might otherwise be determined by law, then Contractor may, at its sole discretion, terminate this Subcontract or any part thereof, by giving written notice of said termination to Subcontractor. In the event of such termination, Contractor may use any and all materials, equipment, tools or chattels furnished by or belonging to the Subcontractor either at or for the project...." (Emphasis added.)
Thus, the Messers' termination under one contract was a material breach of the other contract, which allowed Brindley the specified remedies, including termination, under both contracts. Brindley has, in fact, terminated the Messers under both contracts.
Thus, because the claim of the Messers under each contract arises out of or relates to the other contract or the breach thereof, the claim under each contract is included within the ambit of the arbitration provisions of the other contract and combined with the claim under that other contract. The total of the claims so included within the ambit of the arbitration provisions of each contract exceeds the $50,000 limit and thereby defeats arbitrability.
Requiring the Messers to arbitrate two separate claims instead of allowing them to litigate one single civil action in this case is contrary to the letter of these contracts, the intent of our Rules of Civil Procedure, and the spirit of the FAA to promote economy in the resolution of claims. Thus, the Messers are entitled to a writ of mandamus directing the trial judge to vacate his order of June 30, 1999, and to enter an order denying the motion of Brindley Construction Group to compel arbitration. Therefore, I respectfully dissent.
NOTES
[1] Although the complaint and the amended complaints name other companies and individuals as defendants, the bodies of the complaints state no claim against the other defendants.
[2] Each contract provides:

"13.1 Subcontractor may be deemed by Contractor to have materially breached the Subcontract if Subcontractor should ... (d) be terminated under any other contract relative to the project. In case of such a breach as herein defined or as might otherwise be determined by law, then Contractor may, at its sole discretion, terminate this Subcontract or any part thereof, by giving written notice of said termination to Subcontractor...."
(Emphasis added.) This provision allows, but does not require, Brindley Construction Group to terminate the contract if the Messers breach either contract. It does not mean that the breach of one contract necessarily constitutes a breach of the other contract. Moreover, this provision is not applicable under these circumstances, because this case involves an alleged breach by Brindley Construction Group, not by the Messers.