800 So.2d 670 (2001)
Cynthia J. HIRSHENSON, Appellant,
v.
Louis J. SPACCIO, et al., Appellees.
No. 5D00-2145.
District Court of Appeal of Florida, Fifth District.
November 30, 2001.
*671 Allan P. Whitehead of Frese, Nash & Hansen, P.A., Melbourne, for Appellant.
Jeffrey A. Winikoff of Stein, Rosenberg & Winikoff, P.A., Fort Lauderdale, for Appellees.
SAWAYA, J.
Cynthia Hirshenson (Cynthia) appeals a non-final order which required her to arbitrate her claim against the appellees, Louis J. Spaccio (Spaccio) and Anchor Management Group, Inc. (Anchor).[1] We affirm.

*672 Factual Background
In 1995, Cynthia, age 62, and Jerome, age 70, met Spaccio at a financial seminar for retirees given by Spaccio and Anchor. Spaccio was an investment counselor employed by Anchor. Cynthia and Jerome spoke to Spaccio and made arrangements to meet with him to discuss their investment options.
At the meeting, Jerome advised Spaccio that he had a modest income; he and Cynthia had $40,000 invested in Dreyfus Intermediate Tax Free Bond Fund; and his primary concern was that, in the event he predeceased Cynthia, she would have sufficient money to live on comfortably. Jerome asked Spaccio to recommend an alternative, low risk income investment with a greater yield. Spaccio recommended Keller Financial Services, Inc. (Keller), a business involved in financing automobile loans.
Spaccio told Cynthia and Jerome that Brian Keller was "a great guy" and that the Keller notes were practically "a sure thing." He advised them that investing in Keller was like investing in GMAC or Ford Motor Credit and that the notes were secured by over 7,000 automobiles owned by the individual note holders. Further, he stated that if Keller ever defaulted, Meridian Bank & Trust Company would step in and make the principal and interest payments to the note holders.
Cynthia and Jerome opened a securities brokerage account with Anchor and purchased a $40,000 secured promissory note issued by Keller on July 25, 1995. Anchor acted as an "introducing broker," which is a broker engaged in soliciting or accepting orders for the purchase or sale of any commodity for future delivery who does not accept any money, securities or property to guarantee or secure trades or contracts that result therefrom.[2] J.W. Charles Clearing Corporation (JWC) actually carried the account as the "clearing broker."[3] At the time Cynthia and Jerome purchased the Keller bond, they executed a customer agreement with JWC which provided in pertinent part:
JWC will accept from such other broker, without any inquiry or investigation: (a) orders for the purchase or sale of securities and other property in the undersign's account on margin or otherwise and (b) any other instructions concerning the undersign's account or the property therein. The undersigned understands and agrees that JWC shall have no responsibility or liability whatsoever to the undersigned for any acts or omissions of such other broker, its officers, employees or agent. The undersigned agrees and understands that the undersign's broker is not an agent of, or supervised by JWC.
(Emphasis in original). The note provided for interest payments only, with the principal *673 due and payable on December 31, 1999. However, in 1998, Keller went bankrupt, and Cynthia and Jerome lost everything. As a result, Cynthia was unable to have an eye operation she needed. Unfortunately, Jerome passed away shortly after the Keller bankruptcy.
Cynthia filed her initial complaint for damages against Spaccio and Anchor. She alleged five theories of recovery: common law fraud, negligent misrepresentation, breach of fiduciary duty, negligence, and violations of Chapter 517, the Florida Securities Act. Spaccio and Anchor subsequently filed a motion to compel arbitration and stay proceedings and/or motion to dismiss based upon the arbitration clause in the customer agreement between JWC and the Hirshensons. The trial court granted the motion and Cynthia appeals.
The JWC agreement specifically provides that it "shall be governed by the laws of the State of Florida." Under Florida law, "there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (citation omitted).
Specifically, Spaccio and Anchor argue that they are third party beneficiaries of the customer agreement entered into between Cynthia and JWC and, therefore, they are entitled to enforce the arbitration clause contained therein. Cynthia contends that they are not third party beneficiaries of the agreement and, assuming that they were, the claims she asserts in her complaint exceed the scope of the arbitration clause. Although the parties raise several other issues in these proceedings, the issues which we find merit discussion relate to the first two prongs. Thus we must first determine whether Spaccio and Anchor are third party beneficiaries of the JWC agreement entitling them to enforce the arbitration clause and, if they are, whether Cynthia's claims fall within the ambit of the arbitration clause.

Third Party Beneficiary Status
Arbitration clauses in brokerage agreements may be valid and enforceable. See Oppenheimer & Co., Inc. v. Young, 475 So.2d 221 (Fla.1985); Stratton Oakmont, Inc. v. Goldstein, 615 So.2d 183 (Fla. 3d DCA 1993). Florida courts have generally held that arbitration clauses in contracts may be enforced by and are binding on third party beneficiaries. Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc., 778 So.2d 1089 (Fla. 4th DCA 2001); Nestler Poletto Realty, Inc. v. Kassin, 730 So.2d 324, 326 (Fla. 4th DCA 1999) (citing Tartell v. Chera, 668 So.2d 1105 (Fla. 4th DCA 1996)); see also Orion Ins. Co. v. Magnetic Imaging Sys. I, 696 So.2d 475, 478 (Fla. 3d DCA 1997). The right of an intended, third party beneficiary to sue under a contract is recognized only if the parties clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party. Jim Macon Bldg. Contractors, Inc. v. Lake County, 763 So.2d 1223 (Fla. 5th DCA 2000).
The JWC agreement specifically provides in pertinent part that:
The undersigned agrees that the undersign's broker is a third party beneficiary of this Agreement, and that the terms and conditions hereof, including the arbitration clause, shall be applicable to all matters between or among undersigned, under-sign's broker or JWC.
The agreement clearly identifies the customer's broker, i.e., the introducing broker, as a third party beneficiary of the agreement. We find that the agreement is sufficient to establish that Anchor and *674 Spaccio are third party beneficiaries of the agreement between JWC and Cynthia. Therefore, we must next decide whether the claims presented in Cynthia's complaint fall within the umbra of the arbitration clause of the agreement.

Whether The Claims Fall Within The Provisions Of The Arbitration Clause
The scope of third party beneficiary rights are generally defined by the contract and, therefore, the provision of the contract which includes the arbitration clause will also define the scope of the arbitration provisions. See Orion; Zac Smith & Co., Inc. v. Moonspinner Condo. Ass'n, Inc., 472 So.2d 1324, 1324 (Fla. 1st DCA 1985) ("A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and the promisee.") (citation omitted). Whether a particular issue is subject to arbitration is generally considered a matter of contract interpretation, and, therefore, the standard of review is de novo. Ocwen Fed. Bank FSB v. LVWD, Ltd., 766 So.2d 248, 249 (Fla. 4th DCA 2000); see also Florida Title Loans, Inc. v. Christie, 770 So.2d 750, 750 (Fla. 1st DCA 2000) (citing Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla. 1st DCA 1999)). "Contractual arbitration is mandatory only where the subject matter of the controversy falls within what the parties have agreed will be submitted to arbitration." Ocwen, 766 So.2d at 249 (citing Nestler-Poletto).
Courts generally favor arbitration as a means of alternative dispute resolution, and any doubt concerning the scope of the arbitration clause should be resolved in favor of arbitration. Id.; see K.P. Meiring Constr., Inc. v. Northbay I & E, Inc., 761 So.2d 1221 (Fla. 2d DCA 2000); Breckenridge v. Farber, 640 So.2d 208 (Fla. 4th DCA 1994). "Arbitration clauses are to be given the broadest possible interpretation in order to accomplish the purpose of resolving controversies outside of the courts." Ocwen Fin. Corp. v. Holman, 769 So.2d 481, 483 (Fla. 4th DCA 2000) (citation omitted). These principles have been enunciated and embraced in prior decisions of this court. See e.g., Terminix Int'l Co., LP v. Ponzio, 693 So.2d 104 (Fla. 5th DCA 1997).
Cynthia argues that should this court find that the agreement is binding on her, the scope of the arbitration clause is not broad enough to include this particular controversy, and thus arbitration should not be compelled. The JWC agreement contains an arbitration clause which provides in pertinent part as follows:
Any and all controversies arising out of or relating to this agreement or the conduct of the parties hereto which can be lawfully submitted to arbitration, should be submitted to arbitration in accordance with the rules, then existing, of either the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election on behalf of the undersigned. The award of the arbitrators, or a majority of them, shall be final, and judgment upon the award may be entered in any state or federal court having jurisdiction. This clause binds the undersigned to submit to arbitration all claims including those which could otherwise be brought in a judicial forum and those which could be joined to other non-arbitrable claims.
(Emphasis in original).
The claims presented in Cynthia's complaint are for fraud, negligence, negligent *675 misrepresentation, breach of a fiduciary duty and violations of Chapter 517. As to the latter, the mere fact that chapter 517 creates a statutory claim does not mean that it is not subject to arbitration. "Arbitration clauses have repeatedly been held to apply to statutory claims." Aztec Med. Servs., Inc. v. Burger, 792 So.2d 617, 622 (Fla. 4th DCA 2001) (citations omitted); see also § 517.122, Fla. Stat. (1999).
The court in Seifert, in determining whether the tort claim came within the contract's arbitration clause requiring arbitration of any claim or controversy "arising out of or relating to" the contract, held that the appropriate test was whether "the tort claim, as alleged in the complaint, arises from and bears such a significant relationship to the contract between the parties as to mandate application of the arbitration clause." Seifert, 750 So.2d at 640. In order to make this determination, the court examined the contract containing the arbitration clause and the allegations of the complaint to see if there existed a sufficient nexus between the two. Thus if the tort theory alleged is unrelated to the rights and obligations of the contract, the action was not contemplated by the parties when the contract was made and should not be the subject of arbitration. Seifert. But the clause at issue in the instant proceedings is even broader because it also provides for controversies "arising out of or relating" to the conduct of the parties. Therefore, we must extend the Seifert analysis to both the contract provisions and the conduct of the parties in the instant case.
The JWC contract specifically provides that:

JWC shall have no responsibility or liability whatsoever to the undersigned for any acts or omissions of such other broker [the introducing broker], its officers, employees or agent .... JWC has no control relationship over the undersign's broker or broker dealer and is not responsible for the suitability of investments made by the undersigned ....
(Emphasis added). This provision of the agreement requires arbitration for claims arising out of the suitability of investments made by the undersigned. That is, Anchor, as a third party beneficiary, is entitled to arbitration for any claim which involves whether the particular investment was unsuitable for the particular customer. The particularities of the fraud claim, for example, involve a claim that there was a common plan, scheme and unlawful course of conduct,
pursuant to which [Spaccio and Anchor] knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon [Cynthia] and made various deceptive and untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to [Cynthia].
We find that this places the claim as one involving the suitability of investments. Furthermore, the allegations of each count of the complaint pertain to the wrongful conduct of Spaccio and Anchor relating to the investment and their involvement with Cynthia and her late husband. Thus the allegations contained within the complaint either relate to the suitability of the investment or to the wrongful conduct of Spaccio and Anchor, therefore bringing each claim within the ambit of the arbitration clause.
Moreover, the arbitration clause specifically provides that it "binds the undersigned to submit to arbitration all claims including those which could otherwise be brought in a judicial forum and those which could be joined to other non-arbitrable *676 claims." This is an acknowledgment that other claims, not contemplated by the scope of the JWC agreement, could be existent and subject to the arbitration provisions. In addition, the agreement further provides that:
The undersigned agrees that the undersign's broker is a third party beneficiary of this Agreement, and that the terms and conditions hereof, including the arbitration clause, shall be applicable to all matters between or among undersigned, undersign's broker or JWC.

(Emphasis supplied).
These provisions, in addition to the broad language contained in the arbitration clause, clearly indicate the intention of the parties that any and all disputes between the parties, regardless of whether they arise from the contract, be subject to arbitration.

Conclusion
We conclude that a valid and binding arbitration agreement exists between the parties and that the causes of action based on fraud, negligent misrepresentation, negligence, securities violation, and breach of fiduciary duty present arbitrable claims that are subject to the agreement. We, therefore, affirm the order under review.
AFFIRMED.
PETERSON and PLEUS, JJ., concur.
NOTES
[1] Jurisdiction is predicated on Florida Rule of Appellate Procedure 9.130(a)(3)(C)(v) which provides that appellate courts may review non-final orders that determine the entitlement of a party to arbitration. See Florida Power Corp. v. City of Casselberry, 793 So.2d 1174 (Fla. 5th DCA 2001).
[2] See 7 U.S.C. § 1a(14) (1999); Commodity Futures Trading Comm'n v. Rosenberg, 85 F.Supp.2d 424 (D.N.J.2000). An introducing broker is generally a small broker that provides stock brokerage services and handles the substantive management of a customer's accounts. See Lenhart v. Westfield Fin. Corp., 909 F.Supp. 744, 746 n. 1 (D.Haw.1995); Kyung Sup Ahn v. Rooney, Pace Inc., 624 F.Supp. 368 (S.D.N.Y.1985). It is customary in the case of smaller brokers for another entity called the "clearing broker" to perform mechanical, record keeping functions relating to the clearance and settlement of various transactions in the customer accounts. Lenhart, 909 F.Supp. at 746 n. 1.
[3] A clearing broker facilitates trades by processing orders, maintaining access to the mercantile exchange, and arranging for transfer of funds. See generally, Farmland Indus. v. Frazier-Parrott Commodities, Inc., 871 F.2d 1402 (8th Cir.1989).