867 So.2d 1104 (2002)
MOUNTAIN HEATING AND COOLING, INC.
v.
VAN TASSEL-PROCTOR, INC.
2010333.
Court of Civil Appeals of Alabama.
June 14, 2002.
*1105 Jim H. Fernandez of Fernandez, Ollinger & Combs, Mobile, for appellant.
Susan S. Wagner and D. Keith Andress of Berkowitz, Lefkovits, Isom & Kushner, P.C., Birmingham; and Edward C. Greene of Frazer, Greene, Upchurch & Baker, L.L.C., Mobile, for appellee.
*1106 PITTMAN, Judge.
Mountain Heating and Cooling, Inc. ("MHC"), appeals the trial court's judgment granting Van Tassel-Proctor, Inc.'s ("Van Tassel"), motion to compel arbitration. The Supreme Court of Alabama transferred the appeal to this court pursuant to Ala.Code 1975, § 12-2-7(6).
Rule 4(d), Ala. R.App. P., adopted effective October 1, 2001, provides that both the denial and the grant of a motion to compel arbitration is to be reviewed by appeal. Before the adoption of Rule 4(d), the grant of a motion to compel arbitration was to be reviewed by a petition for a writ of mandamus. MHC filed its notice of appeal on October 1, 2001; therefore, the trial court's judgment granting the motion to compel arbitration is to be reviewed by appeal.
"[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999). "A motion to compel arbitration is analogous to a motion for a summary judgment." TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). "The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce." Id. "`[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'" Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000), quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing) (emphasis omitted).
MHC argues that it did not agree to arbitrate its claims against Van Tassel. The contract signed by MHC and Van Tassel contains paragraph 22(B), which states, in pertinent part:
"And if said dispute can not [sic] be settled through direct discussions the parties agree to settle the dispute by arbitration under the `Construction Industry Mediation Rules of the American Arbitration Association.'"
Paragraph 22(B) originally contained the following statement, which was capitalized and in bold typeface:
"In the event of any litigation arising hereunder, [Van Tassel] and [MHC] unconditionally and absolutely waive any and all rights to trial by jury."
MHC and Van Tassel agreed to strike this statement from the contract.
MHC argues that paragraph 22(B) as written does not constitute an agreement to arbitrate. MHC first argues that its striking of the statement waiving the right to a jury trial makes the remaining portion of the paragraph an invalid arbitration provision. MHC apparently argues that in order for an arbitration agreement to be enforceable, the agreement must contain a statement waiving the right to a jury trial. We disagree.
Our supreme court has stated that "signing an agreement providing that all disputes are to be resolved exclusively through arbitration is equivalent to waiving one's right to a trial by jury." Thermo-Sav, Inc. v. Bozeman, 782 So.2d 241, 243 (Ala.2000). However, no Alabama case has held that a valid arbitration agreement must contain an express waiver of the right to a jury trial. The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), likewise imposes no such requirement. *1107 Therefore, we conclude that an express waiver of the right to a jury trial is not required for a valid arbitration provision.
MHC further argues that the arbitration provision of paragraph 22(B) is ambiguous because it refers to the "Construction Industry Mediation Rules of the American Arbitration Association" (emphasis added). MHC argues that the word "Mediation" creates an ambiguity as to whether it agreed to mediation or to arbitration. Van Tassel concedes that this phrase is a typographical error in the contract and should state, "Construction Industry Arbitration and Mediation Rules of the American Arbitration Association" (emphasis added). Van Tassel contends that the typographical error does not create an ambiguity in the contract.
Contracts providing for arbitration are interpreted like other contracts and "cannot be singled out and subjected to rules of construction that are different from, or more stringent than, the rules of construction applied to contracts generally." Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564, 570 (Ala.1999), citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). To determine whether a contract is ambiguous, the court is guided by the intent of the parties, which is indicated by the plain language of the contract. Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995). We conclude that the contract unambiguously provides for arbitration, regardless of the use in the contract of the word "Mediation." Paragraph 22(B) is entitled "Arbitration," and the rules of the "American Arbitration Association" govern a dispute. Therefore, we conclude that the paragraph 22(B) is unambiguously an arbitration provision.
MHC also argues that Van Tassel is precluded from enforcing the arbitration provision because it "substantially invoked the litigation process." Van Tassel is the contractor for Carmike Cinemas for a theater being constructed in Mobile. MHC is one of Van Tassel's subcontractors on the construction project. As stated above, Van Tassel filed a successful motion to compel arbitration against MHC. Van Tassel has also sued Carmike in Mobile Circuit Court. MHC argues that Van Tassel's election to proceed judicially against Carmike is inconsistent with its election to compel arbitration against MHC.
Our supreme court has stated:
"It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995).
Van Tassel's disputes with Carmike and MHC do arise from the same construction project; however, the disputes are distinct. We will not require Van Tassel to be limited either to proceed judicially with its primary customer Carmike and all of its subcontractors or to proceed with arbitration with Carmike and its subcontractors. Van Tassel's choice to proceed judicially *1108 against Carmike does not prejudice MHC. Therefore, we conclude that Van Tassel's choice to proceed judicially against Carmike is not a waiver of its right to compel arbitration against MHC.
MHC further argues that the contract does not involve interstate commerce; therefore, MHC contends, the arbitration provision cannot be enforced. In order for an arbitration provision to be enforceable, it must "substantially affect interstate commerce." Sisters of Visitation v. Cochran Plastering Co., 775 So.2d 759, 767 (Ala.2000). The court in Sisters of Visitation held that the contract in that case involving two Alabama residents and performance in Alabama did not "substantially affect" interstate commerce. Id. The supreme court distinguished Sisters of Visitation in Ballard Services, Inc. v. Conner, 807 So.2d 519 (Ala.2001), and concluded that the contract in that case did "substantially affect" interstate commerce due to the diverse citizenship of the parties, materials essential to the contract coming from out of state, and negotiations with other out-of-state parties. See generally, 807 So.2d at 521-23.
This case is similar to Ballard. MHC is an Alabama corporation with its principal place of business in Alabama and Van Tassel is an Arkansas corporation with its principal place of business in Arkansas. Carmike is a Georgia corporation. Van Tassel also presented evidence that the contract involved large interstate shipments of materials and supplies. Therefore, we conclude that the contract "substantially affects" interstate commerce and that the arbitration provision is enforceable.
MHC lastly argues that because the contract contains a provision providing for the application of Alabama law, the arbitration provision is not enforceable. We disagree. Our supreme court has stated that a contract that is governed by Alabama law does not affect the enforceability of an arbitration provision. See Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 747 n. 9 (Ala.2000) (stating that a contract governed by Alabama law and that contains an arbitration provision is not "inconsistent" or "ambiguous").
None of the arguments advanced by MHC on appeal persuade us that the arbitration provision is unenforceable. Therefore, we affirm the trial court's judgment compelling arbitration.
AFFIRMED.
CRAWLEY, J., concurs.
THOMPSON and MURDOCK, JJ., concur in the result.
YATES, P.J., dissents.
YATES, Presiding Judge, dissenting.
The contract at issue in this case provided, in pertinent part:
"22) LAWS, DISPUTES, ATTORNEYS' FEES:
"A) APPLICABLE LAW: This Agreement is entered into in Mobile, Alabama and shall be construed and governed by the laws of the State of Alabama. Subcontractor shall comply with all laws (federal, state, and local), licensing requirements, statutes, ordinances, rules and regulations of any governmental entity having jurisdiction, and Subcontractor shall indemnify and hold harmless Owner and Contractor from any fines, penalties, costs or liability arising from Subcontractor's failure to comply therewith.
"B) ARBITRATION: Subcontractor agrees that all questions arising under this Subcontract shall be resolved in the first instance by Contractor's Project Manager. No claim for additional compensation *1109 or extension of time shall be considered unless presented to Contractor's Project Manager in writing within seven (7) days after the occurrence giving rise to the dispute. Any claim not satisfactorily resolved by Contractor's Project Manager in the first instance, and which is presented in writing within the time provided, may be appealed by notice in writing to, a) the Contractor's Project Manager within seven (7) days after the Contractor's project manager's initial decision, b) to the Architect/Engineer for the Project if the issue is in the interpretation of the drawings or specifications, in which event the Architect/Engineer's decision shall be final, or c) to an Executive Officer of the Contractor if any other question under the Subcontract is involved. Such written notice and review shall be [a] prerequisite to any further review or any legal action by Subcontractor against the Contractor, Architect, and/or Owner. And if said dispute can not be settled through direct discussions the parties agree to settle the dispute by arbitration under the `Construction Industry Mediation Rules of the American Arbitration Association.' Subcontractor agrees that it will reimburse hold harmless and/or indemnify any attorney's fees and costs incurred by Contractor in connection with any dispute related to this Contract, whether or not suit is filed."
(Emphasis added.)
Mountain Heating and Cooling, Inc. ("MHC"), argues that the agreement is ambiguous because it is unclear whether the parties were agreeing to arbitrate or to mediate disputes arising out of the contract. Van Tassel-Proctor, Inc., argues that the following language is the operative language: "the parties agree to settle the dispute by arbitration"; therefore, it argues, the plain language of the clause cannot be read as providing for anything other than arbitration.
The Alabama Supreme Court and this court have addressed cases involving contracts in which the parties had agreed to "arbitrate" pursuant to the "Construction Industry Arbitration Rules of the American Arbitration Association." In each of those cases, the parties expressly agreed to arbitrate under the "Construction Industry Arbitration Rules of the American Arbitration Association." See F.A. Dobbs & Sons, Inc. v. Northcutt, 819 So.2d 607 (Ala.2001); Ex parte Messer, 797 So.2d 1079 (Ala.2001); Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So.2d 159 (Ala. 1999); Delta Constr. Corp. v. Gooden, 714 So.2d 975 (Ala.1998); Robert Frank McAlpine Architecture, Inc. v. Heilpern, 712 So.2d 738 (Ala.1998); Ex parte Stallings & Sons, Inc., 670 So.2d 861 (Ala.1995); Maxus, Inc. v. Sciacca, 598 So.2d 1376 (Ala. 1992); Ex parte Williams, 591 So.2d 71 (Ala.1991); H.L. Fuller Constr. Co. v. Industrial Dev. Bd. of Vincent, 590 So.2d 218 (Ala.1991); Roscoe v. Jones, 571 So.2d 1043 (Ala.1990); and McKee v. Hendrix, 816 So.2d 30 (Ala.Civ.App.2001).
Other jurisdictions have decided cases in which the parties agreed to "mediate" pursuant to the "Construction Industry Mediation Rules of the American Arbitration Association." Watkins Eng'rs & Constructors, Inc. v. Deutz, AG (Ms. CIV. A.3:01CV1147-M, December 3, 2001) (N.D.Tex.2001)(not published in F.Supp.); W & S Erectors, Inc. v. Metropolitan Steel Indus. (Ms. CV-99-8094, April 27, 2000) (E.D.N.Y.2000)(not published in F.Supp.); H.L. Libby Corp. v. Skelly & Loy, Inc., 910 F.Supp. 195 (M.D.Penn.1995); and K.P. Meiring Constr., Inc. v. Northbay I & E, Inc., 761 So.2d 1221 (Fla.Dist.Ct.App. 2000).
Our supreme court has held:

*1110 "Questions of arbitrabilitythat is, whether the parties agreed to submit their particular dispute to arbitration `must be addressed with a healthy regard for the federal policy favoring arbitration.' [Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,] at 24 [(1983)], ...; but, in determining whether the parties agreed to arbitrate a dispute, this Court `should apply ordinary state-law principles that govern the formation of contracts.' First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); accord Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167-68 (Ala.1999). Consequently, `in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Federal Arbitration] Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.' Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475-76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (citations omitted).
"However, the federal policy favoring arbitration does not require this Court to ignore the contractual intentions of the parties. See Volt Information Sciences, Inc., 489 U.S. at 478-79, 109 S.Ct. 1248; Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Instead, `[t]his Court has clearly and consistently held that a party cannot be required to submit to arbitration any dispute he has not agreed to submit.' Ex parte Stallings & Sons, Inc., 670 So.2d 861, 862 (Ala.1995)(internal quotation marks and citations omitted); accord AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The [Federal Arbitration Act] `simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms,' and `parties are generally free to structure their arbitration agreements as they see fit.' Volt Information Sciences, Inc., 489 U.S. at 478-79, 109 S.Ct. 1248. Accordingly, `as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.' Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
"Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. See Loerch v. National Bank of Commerce of Birmingham, 624 So.2d 552, 553 (Ala.1993). Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala. 1998). If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written. See id. at 36; Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala.1997). On the other hand, if the court determines that the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction to resolve the ambiguity. See Whitson, 703 So.2d at 948. Under those established rules of *1111 contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms. See id. at 948-49; Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala. 1995). Additionally, `if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed.' City of Fairhope v. Town of Daphne, 282 Ala. 51, 58, 208 So.2d 917, 924 (1968); see Whitson, 703 So.2d at 949. Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of contra proferentem, any ambiguity must be construed against the drafter of the contract. See Lackey v. Central Bank of the South, 710 So.2d 419, 422 (Ala.1998)."
Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 745-46 (Ala.2000).
While the American Arbitration Association ("AAA") combined its Construction Industry Mediation Rules and its Arbitration Rules into a single brochure for convenience,[1] the two sets of rules are separate and distinct. Rules M-1 through M-17 set out the procedures for cases being mediated while Rules R-1 through R-57 set out the procedures for cases involved in arbitration. The main opinion appears to argue that the fact that the agency charged with regulating the disputes is the "American Arbitration Association" lends support to the argument that the parties agreed to arbitrate; I disagree. The AAA states in its brochure that it provides a "broad range of dispute resolution services" including mediation and arbitration.
The "Construction Industry Mediation Rules of the American Arbitration Association" referred to in the contract as controlling are the AAA's rules for nonbinding mediation, a procedure that does not require the parties to waive the right to trial by jury. I believe that the language in the agreement requiring the parties to arbitrate pursuant to the "Construction Industry Mediation Rules" creates an ambiguity. That is, the agreement is susceptible to more than one reasonable interpretation.
I note that in Alabama, the supreme court has decided cases where the parties have agreed to mediation as a condition precedent to binding arbitration. See Homes of Legend, supra. In other cases, the parties have agreed to mediation and, if the claim is not resolved, to nonbinding arbitration or binding arbitrationdepending upon what the parties have agreed toand possibly to other mutually agreeable alternative dispute resolution. See Morrison Restaurants, Inc. v. Homestead Village of Fairhope, Ltd., 710 So.2d 905 (Ala.1998). Still other parties have agreed to binding arbitration, but allow one of the parties the option of litigation if that party so chooses. See Green Tree Financial Corp. v. Wampler, 749 So.2d 409 (Ala.1999).
Had Van Tassel-Proctor wished to mediate under the "Construction Industry Mediation Rules of the American Arbitration Association," and then if the dispute was not settled, to require binding arbitration under the "Construction Industry Arbitration Rules of the American Arbitration Association," it could have so provided *1112 in the contract. See, e.g., W & S Erectors, Inc., supra (not published); K.P. Meiring Constr., Inc., supra, 761 So.2d 1221. Instead, Van Tassel-Proctor presented MHC with a preprinted contract. The parties then struck through "Little Rock, Arkansas" and "Arkansas" in two places on the contract and substituted the words "Mobile, Alabama" and "Alabama," respectively. The parties also agreed to strike the following sentence "IN THE EVENT OF ANY LITIGATION ARISING HEREUNDER, THE CONTRACTOR AND SUBCONTRACTOR UNCONDITIONALLY AND ABSOLUTELY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY." (Capitalization in original.) The terms the parties eventually agreed to regarding how disputes would be settled are ambiguous; therefore, I must dissent.
NOTES
[1] The AAA's brochure states: "Because of the increasing popularity of mediation, especially as a prelude to arbitration, the Association has combined its mediation and arbitration rules into a single brochure."