MOORE, Chief Justice
(concurring specially).
I concur with the decision of the Court to deny the petition for a writ of mandamus. I write specially to explain my reasons for denying the petition: (1) the petitioners’ delay in moving to strike the demand for a jury trial and (2) the unconstitutionality of predispute contractual jury waivers as violating the right to a jury trial.

I. DELAY IN MOVING TO STRIKE JURY DEMAND

First Exchange Bank, Farmers Exchange Bank, and Dan Thomas, the defendants below (“the petitioners”), seek a writ of mandamus directing the trial court to enter an order striking the jury demand of Thomas Henry and Darla Henry, the plaintiffs below.

A. Facts and Procedural History

On November 18, 2008, the Henrys executed a real-estate mortgage (“the mortgage”) in favor of First Exchange Bank of Brewton, Alabama, a division of Farmers Exchange Bank. The mortgage contains the following provision:
“28. WAIVER OF JURY TRIAL. To the extent not prohibited by law, Mortgagor and Lender knowingly and intentionally waive the right, which the party may have, to a trial by jury with respect to any litigation arising from the Secured Debt, or any other agreement executed in conjunction with the Evidence of Debt and this Mortgage. Mortgagor and Lender each acknowledge that this section has either been brought to the attention of each party’s legal counsel or that each party had the opportunity to do so.”
On September 22, 2010, the Henrys sued the petitioners, demanding a jury trial and alleging, among other things, fraud, breach of contract, and breach of fiduciary duty. The petitioners filed an answer and a counterclaim on November 1, 2010, but did not challenge the jury demand or mention the jury-waiver clause in the mortgage. On April 30, 2012, the petitioners filed a motion to strike the jury demand. The trial court, after holding a hearing on June 7, 2012, denied the motion without comment. The petitioners then filed their petition for a writ of mandamus directing the trial court to enter an order striking the Henrys’ jury démand.
This Court has previously allowed mandamus review of an order addressing the availability of a jury trial. See Ex parte Cupps, 782 So.2d 772, 775 (Ala.2000) (“Mandamus is an appropriate remedy *1011 where the availability of a jury trial is at issue.... ”). See also Ex parte Southtrust Bank of Alabama, NA., 679 So.2d 645 (Ala.1996) (granting a petition for a writ of mandamus and reversing the trial court’s order denying a motion to strike a jury demand).

B. Standard of Review

“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). “ ‘The standard of review applicable to a trial court’s striking a party’s jury demand is whether the court’s action clearly exceeded the limits of its discretion.’ ” Ex parte Sweeney, 104 So.3d 877, 880 (Ala.2012) (quoting Smith v. Smith, 6 So.3d 534, 541 (Ala.Civ.App.2008)).

C. Discussion

1. Validity of the Jury Waiver

The petitioners urge, and the Henrys do not contest, that the jury-waiver clause in the mortgage was facially enforceable.
“In Gaylord Department Stores of Alabama v. Stephens, 404 So.2d 586, 588 (Ala.1981), this Court articulated three factors to consider in evaluating whether to enforce a contractual waiver of the right to trial by jury: (1) whether the waiver is buried deep in a long contract; (2) whether the bargaining power of the parties is equal; and (3) whether the waiver was intelligently and knowingly made.”
Ex parte BancorpSouth Bank, 109 So.3d 163, 166 (Ala.2012). The jury-waiver clause in the mortgage is conspicuously set out in a separate paragraph entitled — in all capital letters — “WAIVER OF JURY TRIAL.” The Henrys were experienced in real-estate transactions and were under no compulsion to accept the bank’s loan terms. In addition, the Henrys initialed the page containing the jury-waiver provision. In their response to the petition for a writ of mandamus, the Henrys concede, though in inartful language, that the jury-waiver clause in the mortgage satisfied the Gaylord factors:
“Petitioners are correct in that Alabama law clearly recognizes the validity and enforceability of contractual waivers of the right to a jury trial, and equally correct that the Henrys do not contest herein that a court could not find that . [sic] satisfy each of the three relevant factors for determining the enforceability of such waivers; the Henrys do not contest herein that a Court could not • find that. Also, there is no question the Henrys knowingly and intelligently signed the mortgage agreements [sic] in issue, nor any question as to whether the Henrys were aware that a ‘jury waiver’ clause was contained therein. Mall,- Inc. v. Robbins, 412 So.2d 1197, 1199 (Ala.1982), citing Gaylord Department Stores of Alabama v. Stephens, ' 404 So.2d 586, 588 (Ala.1981).”
Henrys’ brief, at 8. “Such an explicit admission in a brief is binding on the party making it.” Ford v. Carylon Corp., 937 So.2d 491, 502 (Ala.2006). At the hearing on the motion to strike, the Henrys’ attorney stated that the Henrys were “[r]eally not disputing the validity of the [mortgage] document.” Henrys’ brief, App. D, at 5. “Again, the grav[amen] of our complaint is not that these people didn’t sign a document and not that they’re not knowledgeable people_” Id. at 8.

2. Laches

a. Procedural Posture

The Henrys argued that the trial court acted within its discretion in denying the *1012 petitioners’ motion to strike the Henrys’ jury demand because, they say, the motion was untimely. The Henrys’ complaint filed on September 22, 2010, included a jury demand, but the petitioners did not file their motion to strike the jury demand until April 30, 2012, 19 months later. At the hearing on the motion, counsel for the Henrys stated: “First, the Court needs to look, we think, at the timing of this motion. The Complaint is two years old. Their answer is approaching two years old.... [The jury-waiver issue] is not raised in their pleadings.” Henrys’ brief, App. D., at 6-7. Though raising the issue of delay, counsel for the Henrys stated that he could not find any cases on point. “So there really aren’t any cases that I could find that says if you wait two years to assert your right to the waiver, that you can’t do it anymore.” Id. at 7.
In their petition for the writ of mandamus, the Henrys present their untimeliness argument as an application of the equitable doctrine of laches. Henrys’ brief, at 17-20. This Court will allow a party to present “new arguments or authorities” in support of propositions urged below. Ex parte Jenkins, 26 So.3d 464, 473 n. 7 (Ala.2009). The Henrys’ argument to the trial court that the motion to strike their jury demand was untimely reasonably invoked the doctrine of laches, though not by name. Courts have construed an objection to a motion to strike a jury demand based on untimeliness as making an implicit laches argument. Responding to an argument that the party filing the motion to strike “delayed unreasonably in moving to strike the jury demand,” one court stated: “[Defendant] does not use the word, but its appeal is to the equitable doctrine of laches.” Bear, Steams Funding, Inc. v. Interface Group-Nevada, Inc. (No. 03 Civ. 8259(CSH), Nov. 7, 2007) (S.D.N.Y.2007) (not reported in F.Supp.2d). Another court, faced with the same argument, stated: “The Court construes this as a laches argument....” Engines, Inc. v. MAN Engines & Components, Inc. (Civil No. 10-277 (RMB/KMW), Feb. 22, 2012) (D.N.J.2012) (not reported in F.Supp.2d).
Even if the Henrys did not adequately preserve their laches argument, this Court could still address it. Although “we will not reverse a trial court on a ground or argument not first presented to the trial court,” Taylor v. Stevenson, 820 So.2d 810, 814 (Ala.2001), we may affirm a trial court’s judgment “on any valid argument, regardless of whether the argument was presented to, considered by, or even rejected by the trial court.” Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000). Accordingly, I address the laches argument raised in the Henrys’ brief to this Court.

b. Merits

Laches “is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with the lapse of time, ... and other circumstances causing prejudice to an adverse party....” Dunn v. Ponceler, 235 Ala. 269, 276, 178 So. 40, 45 (1937). “Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another.” Chase v. Chase, 20 R.I. 202, 37 A. 804, 805 (1897) (quoted in Hauser v. Foley & Co., 190 Ala. 437, 440, 67 So. 252, 253 (1914)). Laches thus assumes the existence of a right but denies its enforcement because of unjustifiable delay that prejudices an adversary.
Rule 39(a), Ala. R. Civ. P., governs motions to strike a jury demand:
“When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless ... (2) *1013 the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of this state.”
Rule 39(a) does not provide a time limit for making a motion to strike a jury demand. See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 225 (3d Cir.2007) (noting that “a party may file a motion to strike a jury demand at any time under [federal] Rule 39(a)”);[1] 8 Moore’s Federal Practice § 39.13[2][c] (3d. ed. 2013) (“Parties have a great deal of latitude on the timing of motions to strike a jury demand.”). Some federal courts have granted motions to strike jury demands up to the time of trial. See, e.g., Tracinda Corp., 502 F.3d at 226-27 (upholding trial court’s striking of jury demand even though motion to strike came approximately three years after original jury demand, after the close of discovery, and about six weeks before trial); Jones-Hailey v. Corporation of TV A, 660 F.Supp. 551, 553 (E.D.Tenn.1987) (striking jury demand “even though TVA waited until one month before the scheduled trial date to move the Court to strike the jury demand”).
Other courts, however, have invoked both the delay and prejudice prongs of the doctrine of laches to deny a late filed motion to strike a jury demand. See United States v. 79.36 Acres of Land, 951 F.2d 364 (9th Cir.1991) (table) (unpublished opinion) (reversing trial court’s striking of jury-trial demand because delay in moving to strike was inexcusable and “defendant had organized its trial strategy contemplating that the case would be tried to a jury rather than the judge”); Burton v. General Motors Corp. (1:95CV1054DFH-TAB, Aug. 15, 2008) (S.D.Ind.2008) (not reported in F.Supp.2d) (holding that the court “has the discretion to deny the defendant’s motion to strike the demand for a jury because the motion was filed so late” and because the opposing party would be prejudiced by disruption of its trial preparations); Rivercenter Assocs. v. Rivera, 858 S.W.2d 366 (Tex.1993) (denying petition for writ of mandamus seeking to reverse denial of motion to strike jury demand because of unjustified delay in asserting contractual jury waiver).
Over a year and a half after the complaint in this case was filed, and three months before the scheduled trial date, the petitioners’ motion to strike the Henrys’ jury demand came before the trial court for a hearing. The Henrys argued that this delay caused them needless expense because the case could have been heard much sooner had it been placed on the nonjury track. Henrys’ brief, at 14-15, 18-19. At the June 7, 2012, motion hearing, counsel for the Henrys noted that “[w]e’re on the jury trial docket for September ... and now ninety days before trial under a scheduling docket, they want to say, ‘You waived your right to a jury demand.’ ” Henrys’ brief, App. D., at 7-8. Under these circumstances the trial court was within its discretion to deny the petitioners’ motion to strike the Henrys’ jury demand under a laches theory. See National Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 668 (S.D.N.Y.1991), affd sub nom., Yaeger v. National Westminster Bank, U.S.A., 962 F.2d 1 (2d Cir.1992) (table) (noting that denial of a motion to strike a jury demand was appropriate when New York courts maintained separate jury and nonjury calendars). Compare Cantiere DiPortovenere Piesse S.p.A. *1014 v. Kerwin, 739 F.Supp. 281, 235-36 (E.D.Pa.1990) (exercising discretion to deny withdrawal of jury demand on eve of trial “ ‘to effectuate a more speedy, efficient judicial determination of the case’ ” (quoting 5 J. Moore & J. Wicker, Moore’s Federal Practice ¶ 39.09 (2d ed. 1988))).

3. Trial Court’s Exercise of Discretion

“In the absence of showing the trial court abused its discretion [in permitting a jury trial] we will not issue a writ of mandamus.” Mobley v. Moore, 350 So.2d 414, 416 (Ala.1977).
“The right to a trial by jury is strongly engrained in our legal heritage and is protected by Section 11 of Article I, of the Constitution of Alabama 1901. In addition, it is the intention of Rule 38(a), [Ala. R. Civ. P.], that nothing in the Alabama Rules of Civil Procedure abridges this fundamental right as declared by our Constitution and by statute. This weighs heavily against a finding of abuse of discretion.”
Mobley, 350 So.2d at 416-17 (upholding grant of untimely jury demand under Rule 39(b), Ala. R. Civ. P.). See also Aetna Ins. Co. v. Kennedy ex rel. Bogash, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937) (“[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver.”). As stated above, the trial court had discretion to decide whether the petitioners’ lengthy delay in moving to strike the jury demand prejudiced the Henrys. “In the absence of any showing of abuse of discretion on the part of the trial court on a matter which is left largely to the discretion of that court, we do not issue writs of mandamus.” Breckenridge v. Leslie, 270 Ala. 23, 25, 115 So.2d 493, 494 (1959).

D. Conclusion

Because of their lengthy delay in moving to strike the Henrys’ jury demand, the petitioners in my view are not entitled to a writ of mandamus ordering the trial court to strike the Henrys’ jury demand.

II. UNCONSTITUTIONALITY OF PREDISPUTE JURY WAIVERS

Although the untimeliness of the petitioners’ motion to strike the jury demand was sufficient reason to deny their petition for a writ of mandamus, I believe that even if the motion were timely, the writ should be denied on the ground that predispute contractual waivers of a jury trial are unconstitutional.

A. The Right to Trial by Jury: A Historical View

America inherited its high regard for the jury from England, where it had become, in Sir William Blackstone’s words, “the glory of the English law” that “has so great an advantage over others in regulating civil property.” Ill Sir William Blackstone, Commentaries on the Laws of England *379. According to Sir Frederick Pollock and Frederic William Maitland, “[t]he essence of the jury — if we use the term jury in the widest sense that can be given to it — seems to be this: a body of neighbors is summoned by some public officer to give upon oath a true answer to some question.” The History of English Law Before the Time of Edward 1138 (2d ed. Cambridge University Press 1905).
Pollock and Maitland discuss how the jury system arrived in Britain:
“The English jury has been so highly prized by Englishmen, so often copied by foreigners, that its origin has been sought in many different directions. At the present day, however, there can be very little doubt as to the quarter to which we ought to look. We must look to the Frankish inquisitio, the prerogative rights of Frankish kings.”
Pollock & Maitland, at 140. In the 9th century, in England, before the reign of *1015 King Alfred, the Danes gradually began to incorporate the jury model into the English legal system. The Normans refined and revised this model:
“A Danish town in England often had, as its principal officers, twelve hereditary ‘law men.’ The Danes introduced the habit of making committees among the freemen in court, which perhaps made England favourable ground for the future growth of the jury system out of a Frankish custom introduced later by the Normans.”
G.M. Trevelyan, A Shortened History of England 81-82 (Penguin Books 1942).
Of note in the present case is that, during the 12th century, Geoffrey of Anjou, also known as Geoffrey V or Geoffrey Plantagenet, implemented the jury model “for important civil cases.” Harold J. Berman, Law and Revolution 448 (Harvard University Press 1988) (emphasis added). The jury model thus first arose in England as a right, not in criminal cases, but in civil cases: “[T]he regular use of a small group of neighbors to decide cases before royal judges first emerged, in English law, in civil cases, and only two generations later was it taken into criminal law.” Berman, at 449. The civil jury system expanded and developed under the rule of Geoffrey of Anjou’s son, Henry II (1154-1189): “Henry’s Grand Assize enabled a man whose right to property in land was challenged ... to claim a trial by jury. If such were his choice, twelve neighbors who knew the facts were to testify before the King’s Justices as to which party had the better right to the land.” Trevelyan, at 138.
Writing during the reign of Henry II, the jurist Ranulf de Glanville described the procedure by which a plaintiff in a civil trial regarding property would seek a writ of assize to initiate the lawsuit, at which point the defendant would “pray another Writ, in order that four lawful Knights of the County, and of the Vicinage, might elect twelve lawful Knights from the same Vicinage, who should say, upon their oaths, which of the litigating parties, have the greater right to the Land in question.” Ranulf de Glanville, A Treatise on the Laws and Customs of the Kingdom of England: Composed in the Time of King Henry the Second 48 (John Beams trans., John Byrne & Co. 1900) (approx. 1188).
These precedents established during the reign of Henry II enabled the jury model to flourish in England for centuries to come: “In the course of the later Middle Ages the jury were gradually transformed from givers of sworn evidence to judges of the evidence of others.” Trevelyan, at 139. In the 13th century, when King John imposed high taxes on barons and landowners and then used the revenue to fight expensive wars against France, as well as to fund a campaign against the church in Rome, a group of feudal barons forced him, in 1215, to affix his great seal to Magna Carta, which guaranteed a right to trial by jury in both civil and criminal matters: “Nullus liber homo capiatur, vel imprisonetur, aut disseisetur, aut utlage-tur, aut exuletur, aut aliquo modo destrua-tur; nec super eum ibimus, nec super eum mittemus, nisi per legale judicium parium suorum, vel per legem terra.”[2] Article 39, Magna Carta.
*1016 Nevertheless, the command or official seal of the king was not necessary for the civil jury trial to flourish as a widespread practice, because even commercial courts in the 13th and 14th centuries, operating pursuant to the ancient law of merchants, recognized the right to a jury trial and took pains to organize juries made up of citizens of different nations: “Trials involving both a merchant stranger and an Englishman required a mixed jury composed half of foreigners and half of English subjects. Appeals could be taken to the chancellor and the king’s council.” Berman, at 347.
By the 15th century, the jury trial had become a touchstone of the English legal system and would continue in roughly the same form until the present era: “In the Fifteenth Century the jury system, more or less as we now have it, was already the boast of Englishmen, proudly contrasted by Chief Justice Fortescue with French procedure where torture was freely used.” Trevelyan, at 139. Moreover, the jury “became even more important [in England] when the volume of litigation soared in the sixteenth and seventeenth centuries.” Stephen Landsman, The Civil Jury in America: Scenes from an Unappreciated History, 44 Hastings L.J. 579, 589 (1993) (quoting Alan MacFarlane, Reconstructing Historical Communities 183 (1977), for evidence that between 1589 and 1593 more than 200 legal actions went before juries). In one of the most famous cases in England during the 17th century, a jury of 12 acquitted Quakers William Penn and William Mead, who had been prosecuted for preaching on public streets. See 6 T.B. Howell, A Complete Collection of State Trials 951 (T.C. Hansard 1765).
By the 18th century, the jury trial was so highly regarded in English law that Blackstone would describe it with considerable detail and characterize it as a means to the “great end of civil society”:
“The impartial administration, of justice, which secures both our persons and our properties, is the great end of civil society. ... [I]n settling and adjusting a question of fact, when intrusted to any single Magistrate, partiality and injustice have an ample field to range in; either by boldly asserting that to be approved which is not so, or, more artfully, by suppressing some circumstances, stretching and warping others, and distinguishing away the remainder. Here, therefore, a competent number of sensible and upright jurymen, chosen by lot, from among those of the middle rank, will be found the best investigators of truth, and the surest guardians of public justice. For the most powerful individual in the State will be cautious of committing any flagrant invasion of another’s right, when he knows that the fact of his oppression must be examined and decided by twelve indifferent men; and that, when once the fact is ascertained the law must of course redress it.... Every new tribunal, erected for the decision of facts, without the intervention of a jury, (whether composed of Justices of the Peace, Commissioners of the Revenue, Judges of a court of conscience, or any other standing Magis-’ trates) is a step towards establishing aristocracy, the most oppressive of absolute Governments.... It is, therefore, upon the whole, a duty which every man owes to his country, his friends, his posterity, and himself, to maintain to the utmost of his power, this valuable Constitution of all his rights, to restore it to its ancient dignity, if at all impaired by the different value of property, or otherwise deviated from its first institution; to amend it wherever it is defective; and, above all, to guard with the most jealous circumspection against the introduction of new and arbitrary methods of trial, which, under a variety of plausible *1017 pretences, may in time imperceptibly undermine this best preservative of English liberty.”
Blackstone, at *379-81 (emphasis added).
The Founders shared Blackstone’s reverence for this important right and attempted to secure it in civil as well as criminal matters. As former Chief Justice William Rehnquist explained of the Founders:
“[They] considered the right of trial by jury in civil cases an important bulwark against tyranny and corruption, a safeguard too precious to be left to the whim of the sovereign, or, it might be added, to that of the judiciary. Those who passionately advocated the right to a civil jury trial did not do so because they considered the jury a familiar procedural device that should be continued .... Trial by jury of a layman rather than by the sovereign’s judges was important to the founders because juries represent the layman’s common sense, the passional elements in our nature, and thus keep the administration of law in accord with the wishes and feelings of the community. Those who favored juries believed that a jury would reach a result that a judge either could not or would not reach.”
Parklane Hosiery Co. v. Shore, 439 U.S. 322, 343-44, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (Rehnquist, C.J., dissenting) (footnote omitted; emphasis added). The Founders thus recognized the right to a jury trial as a primary safeguard against arbitrary state action.
The right to trial by jury in America traces back to the 1606 charter James I gave to the Virginia Company. Harold M. Hyman & Catharine M. Tarrant, Aspects of American Trial Jury History, in The Jury System in America 24 (Rita J. Simon ed., Sage Publications 1975). By embracing this right, the Founders recognized what had long been their inherent privilege as Englishmen. The First Continental Congress stated: “[T]he respective colonies are entitled to the common law of England, and more especially to the great and inestimable privilege of being tried by their peers of the vicinage, according to the course of that law.” “Declaration and Resolves of the First Continental Congress,” Res. 5, reproduced in Sources of our Liberties 288 (Richard L. Perry & John C. Cooper eds., American Bar Foundation 1952) (1774).
The Founders considered trial by jury necessary to restrain the powers of centralized government. Thomas Jefferson, for instance, stated: “I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution.” Thomas Jefferson, Letter to Thomas Paine (quoted in The Jefferson Cyclopedia 450 (John P. Foley ed. 1900)). Likewise, James Madison, while discussing the right to a jury trial in civil cases, remarked that the right results “from a social compact, which requires the action of the community, but is as essential to secure the liberty of the people as any one of the pre-existing rights of nature.” James Madison, “Speech Introducing Proposed Constitutional Amendments,” in The American Republic: Primary Sources 340 (Bruce Frohnen ed. 2002). These sentiments were embodied in § 13 of the Virginia Declaration of Rights, a forerunner to the •United States Constitution and Bill of Rights: “[I]n controversies respecting property, and in suits between man and man, the ancient trial by jury is preferable to any other and ought to be held sacred.”
The Founders believed that King George III had disregarded the historical understanding of the right to a jury trial, and they sought to restore that right in the American colonies. In the Declaration of Independence, Jefferson accused King *1018 George of "“abolishing the free system of English laws in [America]” and of “abolishing. our most valuable laws,” including “depriving us in many cases, of the benefits of trial by jury.” The Declaration of Independence para. ¶ 3 (1776). ' When the framers of the Constitution met at the Philadelphia Convention in 1787, they sought to safeguard the right to a jury trial. Although they considered the right to a jury trial to be “fundamental” and “essential for our liberty,” Luther Martin, The Genuine Information Delivered to the Legislature of the State of Maryland, in 2 The Complete Anti-Federalist 19, 70-71 (Herbert J. Storing ed., University of Chicago Press 1981), they memorialized that right in the Constitution only as to criminal cases, not civil cases. U.S. Const, art. Ill, § 3. As one scholar has noted, the failure to mention a constitutional right to a jury trial in civil cases was “not because those at the Constitutional Convention believed jury trial in civil cases to be any less important, but because drafting a provision for civil cases seemed exceedingly difficult.” Colleen P. Murphy, Integrating the Constitutional Authority of Civil and Criminal Juries, 61 Geo. Wash. L.Rev. 723, 743 (1993).
" The anti-federalists opposed the national Constitution in part because the document did not guarantee the right to a civil jury trial. Hugh Williamson of North Carolina objected that in the proposed Constitution “no provison was yet made for juries in civil cases.” Max Farrand, The Records of the Federal Convention of 1787 587 (1911). Likewise, Richard Henry Lee of Virginia objected that “the jury trial is not secured at all in civil causes.” Richard Henry Lee, Letters from The Federal Farmer, in The Complete Anti-Federalist 234, 244. Lee further added that, “[t]hough the convention have not established this trial, it is to be hoped that congress, in putting the new system into execution, will do it by a legislative act, in all cases in which it can be done with propriety.” Id.
George Mason objected that the Constitution presented “no declaration of any kind, for preserving the liberty of the press, or the trial by jury in civil causes.” George Mason, “Objections to this Constitution of Government,” in The Anti-Federalist Papers and the Constitutional Convention Debates 175 (Ralph Ketcham ed., New American Library 2003) (hereinafter “The Anti-Federalist Papers”) (emphasis added). ' Patrick Henry announced that, “[i]n some parts of the [Constitution] before you, the great rights of freemen are endangered, in other parts absolutely taken away. How does your trial by jury stand? In civil cases gone.... ” Patrick Henry, “Speech Before Virginia Ratifying Convention,” in The Anti-Federalist Papers, at 202. Samuel Bryan, an anti-federalist from Pennsylvania, writing under the pseudonym “Centinel,” remarked that, in the Constitution, “there is no declaration of personal rights, premised in most free constitutions; and that trial by jury in civil cases is taken away.” Centinel, “To the Freemen of Pennsylvania,” in The Anti-Federalist Papers, at 236.
In 1788, anti-federalists from Massachusetts were so concerned about the lack of constitutional protections for a right to a civil jury trial that they proposed the following amendment to the Constitution: “In civil actions between Citizens of different States every issue of fact arising in Actions at common law shall be tried by a Jury if the parties or either of them request it.” Amendments Proposed by the Massachusetts Convention, in The Anti-Federalist Papers, at 219. That same year, anti-federalists in the Virginia Convention included the following language in a proposed Bill of Rights to the Constitution: “That, in controversies respecting property, and in suits between man and *1019 man, the ancient trial by jury is one of the greatest securities to the rights of the people, and to remain sacred and inviolable.” The Virginia Convention, Proposed Bill of Rights, in The Anti-Federalist Papers, at 220.
One member of the Pennsylvania Convention took to the pages of the Pennsylvania Packet and the Daily Advertiser to decry the Constitution for failing to include a Bill off Rights that protected, among other things, “jury trial in criminal and civil cases.” “The Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania,” in The Anti-Federalist Papers, at 247 (emphasis added). Having pointed out that “the trial by jury, which is the grand characteristic of the common law, is secured by the constitution, only in criminal cases,” this Pennsylvanian stated: “Not to enlarge upon the loss of the invaluable right of trial by an unbiased jury, so dear to every friend of liberty, the monstrous expence and inconveniences of the mode of proceedings to be adopted, are such as will prove intolerable to the people of this country.” Id. at 249 (emphasis added). In other words, what this country needed, according to this Pennsylvanian, was an expansion, not a restriction, of the right to a jury trial: “We abhor the idea of losing the transcendent privilege of trial by jury.... [I]n Sweden, the liberties of the commons were extinguished by an aristocratic senate: and that trial by jury and the liberty of the people went out together.” Id. at 250.
Although the right to a jury trial in civil cases was not embodied in the United States Constitution, the First Congress sought to calm the fears of the anti-federalists by preserving that right in the Seventh Amendment. Ratified in 1791, the Seventh Amendment memorialized the right to a jury trial that existed at common law: “In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.” To leave no doubt about the importance of this right as contemplated by the Seventh Amendment, the First Congress included the following language in the Judiciary Act of 1789: “[T]he trial of issues of fact, in the district courts, in all causes except civil causes in admirality and maritime jurisdiction, shall be by jury.”
The protection of the right to a trial by jury carried over into the 19th century. Justice Joseph Story, for instance, announced that “trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy.” Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446, 7 L.Ed. 732 (1830). A hundred years later the United States Supreme Court declared the importance of this right: “Maintenance of the jury as a factfinding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.” Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935). In light of this history I wish to “scrutinize[ ] with the utmost care” what I believe to be the important issue raised by this case.

B. Waiver of a Jury Trial in Civil Cases in Alabama

The right to a jury trial in both civil and criminal cases is fundamental to the jurisprudence of this nation and this State. This Court has stated:
“Whatever may be the origin or true history of the jury trial, it is certain that, ever since the Magna Charta, the right to it has beep esteemed a peculiar and inestimable privilege by the English *1020 race. For centuries this great charter has been appealed to, as the protector of the people against the encroachment of the prerogative or despotism of the sovereign. The English colonists who settled in America brought with them this love for and veneration of this cherished right.”
Alford v. State, 170 Ala. 178,184-85, 54 So. 213, 214 (1910). See also Mobley, 350 So.2d at 416-17 (“The right to a trial by jury is strongly engrained in our legal heritage and is protected by Section 11 of Article I, of the Constitution of Alabama 1901.”). Each of Alabama’s Constitutions from 1819 to 1901 “has excepted out of the general powers of government, the power to violate the right of trial by jury.” Clark v. Container Corp. of Am., Inc., 589 So.2d 184, 196 (Ala.1991). The Alabama Constitution states that “the right of trial by jury shall remain inviolate.” Art. I, § 11, Ala. Const.1901. “This provision has remained virtually unchanged since the first state constitution was adopted in 1819. The section draws its meaning from that early history.” Crowe v. State 485 So.2d 351, 363 (Ala.Crim.App.1984), reversed on other grounds, 485 So.2d 373 (Ala.1985). See, e.g., Art. I, § 28, Ala. Const. 1819; Art. I, § 28, Ala. Const. 1861; Art. I, § 12, Ala. Const. 1865; Art. I, § 13, Ala. Const. 1868; Art. I, § 12, Ala. Const. 1875.
Comparing § 11 with its federal counterpart, the Court of Civil Appeals stated: “The Seventh Amendment [to the United States Constitution] is not materially different from § 11, Ala. Const.1901. Each holds the right to a jury trial inviolate and preserves such right as it was at common law at the time the amendment was adopted.” Poston v. Gaddis, 335 So.2d 165, 167 (Ala.Civ.App.1976). The legislature has guaranteed by statute that the “right of trial by jury as at common law and declared by Section 11 of the Constitution of Alabama of 1901 shall be preserved to the parties inviolate.” § 12-2-7, Ala. Code 1975. The Alabama Rules of Civil Procedure also recognize the right to trial by jury: “The right of trial by jury as declared by the Constitution of Alabama or as given by a statute of this State shall be preserved to the parties inviolate.” Rule 38(a), Ala. R. Civ. P. See also Mobley, 350 So.2d at 417 (“[I]t is the intention of Rule 38(a), [Ala. R. Civ. P.], that nothing in the Alabama Rules of Civil Procedure abridges this fundamental right as declared by our Constitution and by statute.”).
Like other rights, the right to a jury trial may be waived, but Rule 38 plainly contemplates only a procedural waiver after a lawsuit has commenced. According to the rule, waiver occurs when there is 1) a failure to serve and to file a timely demand for a jury trial, 2) a failure to appear at the trial, 3) a withdrawal of the demand by the consent of both parties, or 4) a withdrawal of the demand without the consent of the defaulting party. Rule 38(d), Ala. R. Civ. P. The waiver of the right to a jury trial is strictly construed and has been held to apply only to the particular trial at hand. See, e.g., Ex parte Ansley, 107 Ala. 613, 18 So. 242 (1895); Knight v. Farrell & Reynolds, 113 Ala. 258, 20 So. 974 (1896).
In a broad sense, the issue in this case is when and under what conditions may the right to a jury trial in a civil case be waived. More specifically, the issue is whether the jury-waiver provision in the Henrys’ mortgage is inconsistent with the right to a jury trial protected by Art. I, § 11, Ala. Const.1901, and whether a pre-dispute contractual provision that waives the right to a jury trial before that right has accrued is valid.

1. The Right to Trial by Jury in the 1901 Constitution

Although the right to a jury trial is *1021 “a broad and constitutional one, guarded and assured by the [federal and state] Constitutions, yet it is not given, and cannot be claimed, in every trial in which the citizen may suffer punishment or lose his property. The right is confined to those classes of cases in which the right existed at common law, or in which it was used at the time of the adoption of the Constitution.”
Alford v. State, 170 at 188, 54 So. at 215-16. Moreover, § 11 “in no way enlarges the right of jury trial” and “does not extend to cases where the jury trial was not available as of right prior to the Constitution.” Ex parte W &H Mach. & Tool Co., 291 Ala. 517, 520, 283 So.2d 173, 176 (1973). Nor does § 11 “extend to causes totally unknown to the common law or to the statutory law as it existed at the time of the adoption of the Constitution.” W & H Mach. & Tool, 291 Ala. at 520, 283 So.2d at 176. “Unlike the Federal Constitution which preserves the right to jury trial as of 1791, Alabama’s Constitution effected a ‘freezing’ of the right to jury trial as of 1901. Section 11 did not extend the right to eases in which it did not exist at that time.” Gilbreath v. Wallace, 292 Ala. 267, 269, 292 So.2d 651, 652 (1974) (footnote omitted).
The right to a jury trial in civil cases involving mortgages, contracts, and real property did exist at common law in Alabama when § 11 was ratified. See, e.g., Cramer v. Watson, 73 Ala. 127, 130 (1882) (“It is a common law right of a judgment creditor to redeem the lands of his debtor which may be subject to mortgage.”); Southern Express Co. v. Owens, 146 Ala. 412, 418, 41 So. 752, 752 (1906) (noting that “contracts] ... must be construed by the principles of the common law”); Pernell v. Southall Realty, 416 U.S. 363, 370, 94 S.Ct. 1723, 40 L:Ed.2d 198 (1974) (“This Court has long assumed that actions to recover land, like actions for damages to a person or property, are actions at law triable to a jury.”); and Whitehead v. Shattuck, 138 U.S. 146, 151, 11 S.Ct. 276, 34 L.Ed. 873 (1891) (“[Wjhere an action is simply for the recovery and possession of specific, real, or personal property, or for the recovery of a money judgment, the action is one at law.”). Even if there were doubts about whether these issues were triable by a jury, the Court should resolve those doubts in favor of a jury trial. Ex parte Reynolds, 447 So.2d 701 (Ala.1984).
During the Constitutional Convention of 1901, a debate arose over a proposal to reduce the number of jurors in civil actions from 12 to 9. See Official Proceedings, Constitutional Convention of 1901, Vol. 2, pp. 1677-1727. One delegate warned that tampering with the historical right to a jury trial, including the size of the jury, could raise the people’s alarm and endanger ratification:
“[I]f ... you ... adopt the proposition contained in the minority report of the Committee, the same power lies in the hands of designing and unscrupulous men to go to the men who own their little farms all over Alabama, and say to them, this Constitution has done what it was predicted it would not do, it has tampered with the jury system of Alabama. It has put it in the hands of the fellow that has got a mortgage on your property, to get it from you by a verdict of nine men, when the Constitution since the dawn of time has said twelve men, ,and that proposition would give you trouble world without end in securing the adoption of [the] Constitution.”
Official Proceedings at 1723 (cited in Clark v. Container Corp. of Am., Inc., 589 So.2d 184, 189 (Ala.1991)). The proposition was not adopted. The Constitution as adopted in 1901 preserved inviolate the right to a jury trial in civil cases.

*1022
2. Contracting Away the Right to a Jury Trial in a Civil Matter Before a Dispute has Arisen

This Court recently held that “the right to a jury trial is not absolute in that ‘no constitutional or statutory provision prohibits a person from waiving his or her right to a jury trial.’ ” Ex parte Bancorp-South Bank, 109 So.3d at 166 (quoting Mall, Inc. v. Robbins, 412 So.2d 1197,1199 (Ala.1982)). In upholding the contractual waiver of a jury trial in BancorpSouth Bank, this Court relied on Mall, which itself relied on a line of precedent that fundamentally misconstrued the terms of the Alabama Constitution and encouraged the violation of the right to a jury trial. Mall held that “no constitutional ... provision prohibits a person from waiving his or her right to trial by jury.” Mall, 412 So.2d at 1199. This Court has ruled similarly in other recent cases. See, e.g., Ex parte AIG Baker Orange Beach Wharf, LLC, 49 So.3d 1198, 1201 (AJa.2010) (holding that the waiver of a right to a jury trial extended to a tort claim of fraudulent inducement regarding a lease); Hood v. Kelly, 285 Ala. 337, 339, 231 So.2d 901, 904 (1970) (“ ‘The right of jury trial is a personal right, of which no person can be deprived against his will, but there is neither constitutional nor statutory provision which prohibits him from waiving his constitutional privilege in civil actions.’ ” (quoting Oliver v. Herron, 106 Ala. 639, 640, 17 So. 387, 387 (1894))). See also Shoney’s LLC v. MAC East, LLC, 27 So.3d 1216, 1222 (Ala.2009) (“The ban on impairing the obligations of contracts provided in Ala. Const.1901, § 22, is obviously one that shall forever remain inviolate. Alabama caselaw has maintained the constitutional prohibition on impairing contracts by consistently upholding the intent of the contracting parties;”).
The gist of the cases on which the Court in Mall relied is that the Alabama Constitution does not expressly forbid the waiver of the right to a jury trial. This fact, however, does not mean that individuals may waive their right to a jury trial before the right accrues. In fact, Hood and Oliver, cases that have served as the basis for the position that a party may waive the right to a jury trial, both involved challenges to jurors and hence waivers of a jury trial after a lawsuit had been filed. Those cases do not support the holding in Mall that parties may contract away the right to a jury trial before it accrues.
The Constitution never declares that one cannot waive his or her right to a jury trial, but it does explicitly refer to preserving the right to a jury trial inviolate. Rule 38, Ala. R. Civ. P., provides only post-dispute methods by which parties to a lawsuit may waive the right to a jury trial in civil cases. Whenever a party demands a trial by jury “the action shall be designated upon the docket as a jury action,” and the “trial of all issues so demanded shall be by jury.” Rule 39(a), Ala. R. Civ. P. These principles have also received statutory expression:
“The Supreme Court shall have authority
“(4) To make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, that such rules shall not abridge, enlarge, or modify the substantive right of any party ... and provided further, that the right of trial by jury as at common law and declared by Section 11 of the Constitution of Alabama of 1901 shall be preserved to the parties inviolate.”
§ 12-2-7, AIa.Code 1975.

3. Public Policy

A longstanding principle of our legal system is that parties may not contract for goods or services that are forbidden by *1023 law, nor may they make a legally binding agreement that is against public policy.[3] See, e.g., Bozeman v. Gilbert, 1 Ala. 90, 91 (1840) (voiding as against public policy pre-dispute agreements that defeat the jurisdiction of the courts); Flinn v. Barber, 64 Ala. 193,199 (1879) (“Such agreements are not void, as immoral, or evil in themselves, but they are void, because offensive to the policy the statute establishes. Being void, they are nullities....” (emphasis added)); Restatement (Second) of Contracts § 178 (1981) (“A promise or other.term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms”).
A contract for prostitution, for instance, has no validity. Potter v. Grade, 58 Ala. 303, 305 (1877) (“A contract, the consideration of which is future illicit cohabitation, like all agreements to do acts forbidden by the law of God, or in furtherance of immorality, is utterly void.”). Nor may one contract with an infant to the infant’s detriment. West v. Penny, 16 Ala. 186, 189 (1849) (“The contracts of an infant are in general voidable and may be confirmed when he comes of age; those alone are treated as absolutely void, which are certainly and in their nature prejudicial to his interest.” (emphasis added)).
These examples illustrate the doctrine of substantive unconscionability, a relatively new name for an old concept that Justice Story referred to as “contracts of unconscionable nature” and “contracts against public policy.” 1 Commentaries on Equity Jurisprudence as Administered in England and America §§ 351, 371 (W.H. Lyon, Jr., ed., 14th ed. 1918). They reveal an important distinction between a court that decides a case on the ground of its own vision of public policy and a court that decides a case on the ground of public policy established by the constitution, statutes, and common law of the jurisdiction.[4] The decisions in BancorpSouth Bank and Mall dispensed with the inviolate right to a jury trial without constitutional authority, whereas the decisions in Bozeman, Finn, Potter, and West invalidated contracts that contravened public policy as expressed either in the Alabama Constitution or by statute.
*1024 Substantive uneonscionability is a defense to contract enforcement that “relates to the substantive contract terms themselves.” Ex parte Foster, 758 So.2d 516, 520 n. 4 (Ala.1999). Substantively unconscionable agreements include contracts that are void as being against public policy, id,.; see also Ex parte Thicklin, 824 So.2d 728, 782 (Ala.2002), overruled on other grounds by Patriot Mfg., Inc. v. Jackson, 929 So.2d 997, 1006 (Ala.2005) (“[A] contract provision that violates public policy can be subsumed under the theory of substantive uneonscionability.”). There may be nothing in the literal terms of the agreement to mark it as illegal; but if by necessary implication the agreement contravenes public policy, it must be condemned. Anderson v. Blair, 202 Ala. 209, 211, 80 So. 31, 33 (1918) (holding that “agreements to procure government contracts by ... secret and corrupt influences, or by personal influence, are void as against public policy”).
Although the formation of public policy is ordinarily the province of the legislature, Ellis v. West, 971 So.2d 20, 22 (2007), the Alabama Constitution also sets public policy. Therefore, this Court must “weigh the claim that a contractual provision ... is unconscionable in light of the public policy of this State as expressed by the Legislature or by its people in the Constitution.” Thicklin, 824 So.2d at 732. Moreover, public policy “is broader than the mere terms of the Constitution and statutes and embraces their general purpose and spirit.” Georgia Fruit Exch. v. Tumipseed, 9 Ala.App. 123, 128, 62 So. 542, 544 (1913). Courts have invalidated contracts that “violate the general purpose, spirit, and policy of the law as expressed in the Constitution and statutes.” 9 Ala.App. at 129, 62 So. at 544 (emphasis added).
The jury-waiver provision in the Henrys’ mortgage purports to contract away a legal right favored by Alabama public policy, as evidenced in the Constitution, common law, and statutes. The Alabama Constitution preserves the right to a jury trial “inviolate.” Art. I, § 11, Ala. Const.1901; Rule 38(a), Ala. R. Civ. P. Rule 39(d), Ala. R. Civ. P., provides four mechanisms for waiving the right to a jury trial, none of which become available until after a lawsuit has commenced. Some courts have refused to enforce predispute waivers of a jury trial absent express constitutional or legislative authorization. See, e.g., Bank South, N.A. v. Howard, 264 Ga. 339, 444 S.E.2d 799 (1994) (holding that predispute contractual jury waivers were not provided for by the state constitution or code and that, therefore, a guaranty with a provision purporting to waive the right to a jury trial was unenforceable); GE Commercial Fin. Bus. Prop. Corp. v. Heard, 621 F.Supp.2d 1305 (M.D.Ga.2009) (under Georgia law, predispute contractual jury waivers are unenforceable); Frieson v. Al-min Realty Corp., 184 Mise. 346, 54 N.Y.S.2d 243 (1945) (holding that a lease provision waiving a right to a jury trial was void because predispute contractual waivers were not one of the methods expressly defined by statute by which a party could waive a right to a jury); Grafton Partners L.P. v. Superior Ct. of Alameda Cnty., 36 Cal.4th 944, 116 P.3d 479, 32 Cal.Rptr.3d 5 (2005) (holding that predis-pute agreements providing that potential lawsuits be adjudicated in court without a jury were unenforceable absent legislative authorization to the contrary). Like the legislatures in California, Georgia, and New York, the Alabama Legislature has not enacted a law expressly permitting predispute waiver of jury trials — nor, for the reasons stated herein, would it be constitutionally permitted to do so.
Under the public policy of Alabama a party may not surrender the right to a jury trial until an action is commenced and *1025 the right accrues. As early as 1836, this Court held that “a contract, absolutely to waive one’s right to go to law, is void, as against public policy.” Stone v. Dennis, 3 Port. 231, 239 (Ala.1836). An attorney in 1912 expressed this principle as follows:
“[A] general waiver of a jury trial before any cause of action has accrued is obviously against public policy.... It is impossible to conceive how a man can waive a thing which does not exist at the time he waives it; that is to say, the right to a jury trial does not exist until a cause of action has accrued.”
II Message of the President of the United States Transmitting the Report of the Employers’ Liability and Workmen’s Compensation Commission 769 (1912) (Brief of Morris M. Cohen). The petition for a writ of mandamus should be denied on the basis that a predispute agreement to waive the right to a jury trial in a civil case is void as against public policy; prior cases holding that one may, predispute, waive a right to trial by jury should be expressly overruled.
Such a holding would in no way impair the obligation of contracts in contravention of § 22, Ala. Const.1901. Section 26 of the Henrys’ mortgage states:
“This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located.... Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective. ... If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage.”
(Emphasis added.) The parties thus agreed that certain provisions of the mortgage, such as the jury-trial waiver, might be unenforceable under the laws of Alabama at the time they entered into the contract. Moreover, the obligation of a contract under § 22, Ala. Const.1901, is “the law which binds the parties to perform their agreement,” Ogden v. Saunders, 25 U.S. (12 Wheat) 213, 257, 6 L.Ed. 606 (1827), and “depends on the laws in existence when [the contract] was made.” McCracken v. Hayward, 43 U.S. (2 How.) 608, 612, 11 L.Ed. 397 (1844). In addition, “the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated into its terms.” Von Hoffman v. City of Quincy, 71 U.S. (4 Wall.) 535, 550,18 L.Ed. 403 (1866).
In their contract the Henrys and First Exchange Bank agreed to submit to the law of Alabama, which includes Art. I, § 11, Ala. Const.1901. Because a predis-pute waiver of a jury trial finds no support in the constitution or statutes of this State, this Court would not impair the terms of the mortgage by holding that the predis-pute waiver of a jury trial was invalid.

C. Invalidity of a Predispute Jury Waiver

I would hold that the right to a jury trial in civil cases may not be waived by a party before a lawsuit has been filed and the right accrues. Because, “[o]rdinarily, the right to a jury trial is determined by the cause of action stated,” Ex parte Western Ry. of Ala., 283 Ala. 6, 12, 214 So.2d 284, 289 (1968), logically that right cannot be exercised before a lawsuit is filed. A maxim of the common law states that “no right can be barred before it accrues.” Gould v. Womack, 2 Ala. 83, 88 (1841). See also Blackmon v. Blackmon, 16 Ala. 633, 636 (1849) (noting “two maxims of the common law: 1st — that no right can be barred before it accrues.... ”); Adams v. Adams, 39 Ala. 274, 281 (1864); Webb v. Webb’s *1026 Heirs, 29 Ala. 588, 601 (1857).[5] One cannot have full knowledge about what a right entails — about what, exactly, he or she is waiving — until one fully understands what is at stake by giving up the right. Allstar Homes, Inc. v. Waters, 711 So.2d 924, 929 (Ala.1997) (holding that a waiver of the right to a trial by jury must be made knowingly, willingly, and voluntarily).
Waiving a right to a jury trial pursuant to Rule 38, Ala. R. Civ. P., is possible only after a lawsuit has been filed. Only then does a party have the requisite knowledge to make an informed and voluntary decision about the exercise of the right to a jury trial:
“A man may not barter away his life or his freedom, or his substantial rights.... In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge_In these aspects a citizen may no doubt waive the rights to which he may be entitled. He cannot, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions whenever the case may be presented.”
Insurance Co. v. Morse, 87 U.S. (20 Wall.) 445, 451, 22 L.Ed. 365 (1874). I articulated this principle in my special writing in Ex parte Allen, 798 So.2d 668, 676-77 (Ala.2001) (Moore, C.J., concurring specially), which involved a predispute arbitration agreement analogous to the predispute waiver of a jury trial:
“Predispute arbitration agreements are problematic [because they] ... are signed well before any dispute arises between the parties. These predispute agreements are often vague and give little notice to the signing parties of the kinds of conflicts that will subject them to arbitration proceedings and the specific rights they are surrendering. Because predispute agreements are entered into before the grounds on which the waiver of rights is based can be known, there is no real ‘meeting of the minds,’ as contract law requires between two parties who commit to a binding agreement.”
Waiver of a jury trial, to be valid, must occur after a case has been initiated. “Agreements entered into after a controversy arises avoid this problem [regarding full knowledge of the right being waived] because when they enter such agreements, the parties are aware of the kind of complaint they are allowing to proceed to arbitration in the place of a jury trial.” Allen, 798 So.2d at 677 (Moore, C.J., concurring specially). This Court and the United States Supreme Court have interpreted the Federal Arbitration Act (“the FAA”) to preempt an Alabama statute that prohibits specific enforcement of arbitration agreements. See § 8-1-41, Ala.Code 1975. See also Ex parte Messer, 797 So.2d 1079 (Ala.2001)(holding that the FAA preempts Alabama law prohibiting predis-pute arbitration agreements); Southland Corp. v. Keating, 465 U.S. 1, 15-16, 104 5.Ct. 852, 79 L.Ed.2d 1 (1984). But see Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 294, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (Thomas, J., dissenting) (arguing that Alabama’s ban on pre-dispute arbitration agreements is not preempted).
Although outside the arbitration context no federal law attempts to preempt Alabama’s constitutional right to a jury trial,[6] *1027 that inviolate right does not accrue until a lawsuit is filed. No individual may waive a right to a jury trial in Alabama indefinitely into the future, for that right does not accrue if it depends upon future events that may or may not occur. If a person may not exercise a jury-trial right until he or she has been sued, it follows a fortiori that a person may not waive that right before he or she has been sued.
A jury-trial right is analogous to the right to counsel, which cannot be waived until the initiation of legal proceedings. Art. I, § 6, § 10, Ala. Const.1901; Davis v. State, 292 Ala. 210, 291 So.2d 346, 350 (1974); Withers v. State, 36 Ala. 252 (1860). Other rights granted by the Declaration of Rights cannot be waived before they accrue. For instance, a person cannot contractually waive his or her right to sue until that right has accrued. Art. I, § 10, § 11, § 13, Ala. Const.1901. A person cannot contractually waive his or her right to bail until after that right has accrued. Art. I, § 16, Ala. Const.1901. Likewise, because § 11 declares the right to a jury trial to be inviolate, an individual may not waive that right before it accrues.

D. Conclusion

The right to a jury trial is preserved in the 1901 Alabama Constitution. Disputes over mortgages regarding property fall within the scope of protections guaranteed by § 11, Ala. Const.1901,.-because they would have entailed a jury trial at common law when the 1901 Constitution was ratified.
The right to a jury trial in a civil case is inviolate in this State. To date, Rule 38, Ala. R. Civ. P., provides the only lawful method by which the right to a civil jury trial may be waived. The four methods it provides are available only after a lawsuit has been filed. This makes sense because the benefit of the right to a jury trial is not available until after a lawsuit has been filed.
The right to a jury trial, then, is not available for use or to waive until the parties know what claims are being brought against them and can fully understand precisely what they are waiving. It is against public policy in Alabama for this Court to validate any contracts with pre-dispute jury-waiver provisions that violate the inviolate right to a jury trial protected by' § 11, Ala. Const.1901. To hold otherwise would be in direct violation of § 36, Ala. Const. 1901: “[Tjhis enumeration of certain rights shall not impair or deny others retained by the people; and to guard against any encroachments on the rights herein retained, we declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate.” Accordingly, I urge this Court to overturn its recent holding in Bancorp-South Bank and the cases upon which it relied and instead to affirm the inviolate right to a jury trial by holding that predis-pute jury-trial waivers violate the Alabama Constitution.

. "It is well settled that federal decisions regarding the Federal Rules of Civil Procedure are highly persuasive when this Court is called upon to construe the Alabama Rules of Civil Procedure because the Alabama Rules of Civil Procedure are modeled upon the Federal Rules of Civil Procedure.” Allsopp v. Bold-ing, 86 So.3d 952, 959 n. 4 (Ala.2011).

. "No freeman shall be arrested, or imprisoned, or deprived of his freehold, or his liberties, or free customs, or be outlawed, or exiled, or in any manner destroyed [harmed], nor will we [the king] proceed against him, nor send any one against him, by force or arms, unless according to [that is, in execution of] the sentence of his peers, and [or or, as the case may require] the Common Law of England [as it was at the time of Magna Carta].” An Essay on the Trial by Jury 49-50 (Lysander Spooner trans., John P. Jewett & Co. 1852).

. When two parties contract to do something illegal, the contract itself is not illegal, but the action contracted for is illegal.
"The general rule that a court will not lend its assistance toward carrying out the terms of an illegal contract is founded on public policy, that is, the objection which avoids an illegal contract comes from the public at large, who demand that there be no legal remedy for that which itself is illegal....
“It follows that courts will not enforce contracts that violate public policy.”
17A CJ.S. Contracts § 363 (2011). See also Party’s Unlawful Acts in Performance Held to Bar His Recovery Under a Lawful Contract, 61 Colum. L.Rev. 119, 120 (1961) ("Even though the promised performance is not illegal in itself, the bargain is illegal if binding oneself to such performance is prohibited by statute
or contrary to public policy.”). This traditional understanding of public policy, confined to contract law, is based on the notion that courts "do not wish to aid a man who founds his cause of action on his own immoral or illegal act.” Restatement (First) of Contracts § 598 (1932).

. "Public policy ... has a definite and fixed content. It is not merely an ever evolving standardless reflection of the changing morals and values of a society. Thus, for example, a promise made to induce another to have an abortion would be contrary to public policy ...., for such a promise does not appear to be for the purpose of fulfilling a duty to God, or encouraging or assisting in its fulfillment, but rather for a purpose violative of that duty.” Roger Bern, A Biblical Model for Analysis of Issues of Law and Public Policy, 6 Regent U. L. Rev. 103, 153 (1995) (footnote omitted).

. Other states recognize this principle of the common law. See, e.g., Rieger v. Schaible, 81 Neb. 33, 115 N.W. 560, 561 (1908) (noting "the common-law rule: ... no right can be barred before it accrues”); Stilley v. Folger, 14 Ohio 610, 625 (1846) (stating that "at common law, no right can be barred till it accrues”).

. Both the inviolate right to a jury trial under § 11 and the right to open access to the *1027 courts under § 13, Ala. Const.1901, are part of the Declaration of Rights.